# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3094

_____

| | | |
|---|---|---|
| Joyce M. Shockency; | * | |
| John H. Moore, | * | |
| | * | |
| Plaintiffs - Appellees, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| | * | District Court for the |
| Ramsey County, a Minnesota | * | District of Minnesota. |
| municipal corporation; Robert | * | |
| Fletcher, Ramsey County Sheriff, | * | |
| in his official and individual capacity; | * | |
| Nicholas O'Hara, in his official and | * | |
| individual capacity, | * | |
| | * | |
| Defendants - Appellants. | * | |

_____

Submitted: March 12, 2007
Filed: July 12, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

John H. Moore and Joyce M. Shockency brought this § 1983 action against Ramsey County, Sheriff Robert Fletcher, and Inspector Nicholas O'Hara, alleging violations of their First and Fourteenth Amendment rights by retaliatory employment actions after Moore ran against Fletcher in the 2002 election and Shockency supported

him. The district court denied defendants' motion for summary judgment. Fletcher and O'Hara appeal from the order denying them qualified immunity; the county also seeks to appeal. We affirm as to Fletcher, reverse as to O'Hara, and dismiss the county's appeal for lack of jurisdiction.

I.

In reviewing an order denying qualified immunity, we "view the facts and draw reasonable inferences in the light most favorable to the nonmoving part[ies]." Scott v. Harris, 127 S.Ct. 1769, 1774 (2007) (internal quotations omitted). John H. Moore and Joyce M. Shockency were employed as officers in the Ramsey County Sheriff's Department. In June 2001 Moore told coworkers that he intended to run against Sheriff Robert Fletcher in the fall election. Fletcher informed Moore in July 2001 that he was being transferred out of his position as patrol lieutenant and would then be supervised by Nicholas O'Hara, who was a political supporter and friend of the sheriff. After Shockency publicly supported Moore's campaign, she was transferred from her position as sergeant in charge of the midnight patrol shift to a position in the transportation unit with significantly less responsibility. She was also replaced as manager of the field training program.

Moore was hired as a deputy sheriff for Ramsey County in 1981 and was promoted twice, attaining the rank of lieutenant and eventually commanding the entire patrol division. In the latter position he supervised 80 employees and held the highest job available for his rank. He supervised several units, communicated department policy to the public, developed enforcement strategies for community policing, assisted with budget preparation, and composed strategy for long range improvements of the uniformed patrol division.

In July 2001 Moore told coworker Dennis Flaherty about his decision to run for sheriff. Flaherty was a supporter of the sheriff. Ten days after Moore's conversation with Flaherty, Sheriff Fletcher told him he was being transferred out of the patrol

division to lead the apprehension division and that thereafter he would work under the supervision of Inspector Nicholas O'Hara. Fletcher also said, "By the way, I spoke to Flaherty." From the sheriff's reference to his conversation with Flaherty, Moore understood that he was being transferred because of his campaign for sheriff. Fletcher told him that his transfer was due to communication problems with his supervisor, Undersheriff George Altendorfer, but Moore had never before heard anything about any communication problem.

Although Moore remained a lieutenant and retained his basic pay and benefits after his transfer, he claims he lost overtime pay and access to a take home vehicle. In January 2002 Fletcher took away his responsibility for leading the apprehension division and Moore began working with a partner from the unit. In September 2002 Moore was assigned to be O'Hara's executive assistant and was given only administrative duties. The parties contest who was responsible for this decision. Moore was the only lieutenant to have served in the apprehension division, and no other lieutenant was assigned to replace him when he was moved.

O'Hara and Moore did not get along from the beginning of Moore's transfer to apprehension. O'Hara criticized Moore for routine actions that were normally not subject to discipline. He gave Moore dangerous assignments, such as requiring him "per the sheriff" to execute search warrants alone. He gave Moore inconsistent orders and then disciplined him for not following some aspect of the orders. In August 2002 O'Hara began requiring Moore and his partner to keep daily logs indicating what they were doing during the day, even though it was not a step in the disciplinary procedure and no other officers had been required to do so. After Moore was assigned to serve as his executive assistant in September 2002, O'Hara told him that he should not leave the office except for noon lunch. Sheriff Fletcher won reelection in November 2002.

Joyce M. Shockency was hired as a dispatcher in 1977. She was promoted to deputy sheriff in 1989 and to sergeant six years later. In January 1999 Shockency

requested a transfer to the patrol division where she was put in charge of the midnight shift. As the senior officer on duty she communicated with the afternoon and morning shifts to resolve all outstanding issues, reviewed all calls and reports, helped officers prepare for the night shift, processed outgoing mail, worked with dispatch on paperwork, and monitored deputies in the street by radio. She was also responsible for coordinating all first responders in times of emergency, coordinating with surrounding departments, and deciding when it was necessary to contact supervisors. In addition she developed and implemented the field training officer program, a "substantial responsibility." Shockency did not have any disciplinary problems.

Fletcher saw Shockency exhibit her support for Moore's candidacy by marching in a community parade and displaying one of his campaign buttons on her purse. In the summer of 2002 deputy Don Rindal told his colleague Rick Werdien that Shockency would be removed from her position after the election and that he hoped to receive better assignments because of his support for Sheriff Fletcher. Werdien told Shockency about this conversation in the winter of 2002. Fletcher transferred her to the midnight transportation unit in January 2003. That post was in a less active unit which only afforded her the opportunity to do deputy level work even though she had been serving as a sergeant. She was not allowed to arrest anyone, make a traffic stop, or assist other officers with law enforcement activities. Her responsibility for the field training officer program was also taken away, she only supervised one person per shift, and she kept herself busy by filling the day shift cars with gas. At the time of her transfer she was told that she was being reassigned because of reorganization priorities and budget cuts.

Moore and Shockency sued under 42 U.S.C. § 1983, claiming Sheriff Fletcher and Ramsey County violated their First Amendment rights to free speech and association by transferring them out of their positions and causing them to lose overtime pay and access to take home vehicles because of their campaign activities. Moore also brought First Amendment claims against Inspector O'Hara, alleging that O'Hara demoted him to an executive assistant and improperly disciplined him because

of his campaign. Plaintiffs also alleged that defendants violated their equal protection and due process rights by treating their speech differently than that of other employees and caused them to lose their property rights in their prior jobs by the transfers.

In his deposition, Sheriff Fletcher testified that Moore was transferred due to communication problems and Shockency because of reorganization and budget changes. He added that politics should have no place in employment decisions and that the transfers were not made for political reasons. He affirmed that Shockency had never had any disciplinary problems and that her performance had been consistently good and at times exceptional. The sheriff's chief deputy, David Metusalem, testified that Moore and Shockency were not part of Fletcher's management team which consisted of himself, the undersheriffs, and the department's planning and policy director. Moore and Shockency were never invited to participate in management meetings.

Sheriff Fletcher, O'Hara, and the county moved for summary judgment. They argued that Moore and Shockency held policymaking positions which Sheriff Fletcher was entitled to fill with officers loyal to him so the transfers did not violate any constitutional rights and that all claims should be dismissed on the merits. Fletcher and O'Hara argued in the alternative that they were entitled to qualified immunity on the First Amendment claims because it was not clearly established that Moore and Shockency could not be transferred for political patronage reasons. O'Hara claimed in addition that he was not responsible for Moore's transfers and it was not clearly established that any other disciplinary action he took toward Moore was an adverse employment action.

The district court ruled in favor of the defendants on one claim only. It concluded that plaintiffs had not shown infringement of a protected property right by the alleged adverse employment actions. They had not been terminated, and their rank and pay had not been adversely impacted. Their due process claims were therefore

-5-

dismissed. The court denied summary judgment on the equal protection claims.[1] It concluded that plaintiffs had made a prima facie showing that defendants had treated them differently from other employees who had exercised free speech rights and defendants had not rebutted that showing or offered a nondiscriminatory reason for their actions. The court also denied summary judgment on the First Amendment claims, for genuine issues of material fact existed regarding whether plaintiffs suffered adverse employment actions in retaliation for exercising their First Amendment rights. It also denied the alternative motion of Fletcher and O'Hara for qualified immunity on the First Amendment claims without undertaking the two step analysis required by the Supreme Court, see Scott v. Harris,127 S.Ct. 1769, 1774 (2007); Saucier v. Katz, 533 U.S. 194, 202 (2001), but concluding that the law was clearly established that defendants were prohibited from retaliating against plaintiffs for their protected speech.

Fletcher and O'Hara filed this interlocutory appeal arguing that the district court erred in not granting them qualified immunity on the plaintiffs' First Amendment claims. The county seeks to appeal also, arguing that it should have been dismissed on immunity grounds and that it should be dismissed along with the other appellants.

II.

Qualified immunity protects state officials from civil liability for actions that "do not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000). Analyzing whether defendants are entitled to qualified immunity is a two step process, and the threshold question is whether the facts taken in the light favoring the

---

[1]The district court did not address the equal protection claims in considering the motion for qualified immunity, and on appeal the parties have focused their qualified immunity discussion on the First Amendment claims.

nonmoving party show that the official's action violated a constitutional right. Saucier, 533 U.S. at 201. If that answer is yes, the next question is whether the right was clearly established so that "a reasonable official would understand that what he is doing violates that right." Id. Defendants bear the burden of proving that the law was not clearly established. Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997) (en banc). We review the denial of summary judgment based on qualified immunity de novo, viewing all evidence in a light favorable to the non moving parties. Gordon ex. rel. Gordon v. Frank, 454 F.3d 858, 861 (8th Cir. 2006).

It is well established that a government employer cannot take adverse employment actions against its employees for exercising their First Amendment rights. Connick v. Myers, 461 U.S. 138, 142 (1983). The employee's speech rights are not absolute, for there are competing interests as explained by the Supreme Court in Connick v. Myers, 461 U.S. 138 (1983), and Pickering v. Bd. of Educ., 391 U.S. 563 (1968). Whether speech activity is constitutionally protected is determined by analyzing whether it relates to a matter of public concern. See Connick, 461 U.S. at 147. If the speech is protected, the public employer's interest in promoting efficiency is balanced against that of the employee in speaking as a citizen. Pickering, 391 U.S. at 568. A government employer is not liable for an adverse employment action taken against its employees for their speech if the government interest outweighs the interest of the employees in their expressive conduct. Richardson v. Sugg, 448 F.3d 1046, 1062-63 (8th Cir. 2006).

The parties do not dispute that participation in electoral activities is protected under the First Amendment and that Moore and Shockency were exercising such rights. See Burson v. Freeman, 504 U.S. 191, 196 (1995) ("the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office") (citation omitted). They disagree about whether appellees have alleged facts that show they suffered adverse employment actions in retaliation for their speech activity. Saucier, 533 U.S. at 201. Changes in employment duties or conditions that cause material disadvantage to the employee constitute adverse employment actions,

but tangential changes do not. See, e.g., Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997). Lesser actions than demotion, suspension, and termination can be adverse employment actions if their cumulative effect causes an employee to suffer "serious employment consequences" that adversely affect or undermine his position. Kim v. Nash Finch Co., 123 F.3d 1046,1060 (8th Cir. 1997) (adverse employment action occurred where plaintiff's duties were drastically reduced, his personnel file was "papered" with negative reports, his evaluations were drastically lowered, and he was required to participate in special remedial training). "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions."  Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 919 (8th Cir. 2000).

We conclude, taking the facts in the light most favorable to appellees as we must at this point, that Fletcher retaliated against Moore and Shockency for their First Amendment conduct by transferring them from supervisory positions into roles with significantly less responsibility. In Moore's case, he was removed from the highest position available for his rank where he commanded the entire patrol division and supervised 80 employees. Though initially transferred to lead the apprehension unit, he was later demoted to a street officer position, and eventually limited to desk work as the election approached. His transfer caused him to lose overtime pay and a take home vehicle. Shockency had been the highest ranking sergeant in patrol and in charge of the midnight shift. Her supervisory responsibilities were largely eliminated, she lost responsibility for the field training program and she was not given enough duties to fill her hours. We conclude that Moore and Shockency have alleged sufficient facts to show that Fletcher caused them to suffer material changes in their employment that rose to the level of adverse employment actions. See, e.g., Fisher, 225 F.3d at 919; Kim, 123 F.3d at 1060 (decrease in compensation not required for adverse employment actions).

O'Hara argues that he was not responsible for Moore's initial transfer to the apprehension unit nor for Moore's later transfer to serve as his executive assistant.

Although Moore alleges that O'Hara appointed him as his assistant, the portions of the record on which he relies do not support his position. That record indicates that Moore learned about his assignment as executive assistant to O'Hara through a September 12, 2002 memorandum from Undersheriff John Luey, a member of Fletcher's management team. Sheriff Fletcher testified that the decision was made by his management team, which did not include O'Hara, and O'Hara testified that the sheriff was responsible for the transfer. Although we are to draw all inferences in favor of Moore at this stage, we cannot adopt a version of the facts that contradicts the record and infer that O'Hara was responsible for Moore's demotion. See Scott, 127 S.Ct. at 1776. Moore also alleges that O'Hara forced him to execute arrest warrants alone, but the record shows that these instructions were issued "per the sheriff." Moore contends in addition that he suffered material changes in his employment when O'Hara made him record all of his time "on log," ordered him to stay in his office at all times except for the noon lunch hour, and gave him written reprimands and placed negative notes in his file for conduct other officers were not criticized for doing. Whether these additional actions rise to the level of adverse employment actions is a matter of contention relevant on the second step of the qualified immunity analysis.

Appellants argue that they did not violate appellees' First Amendment rights because the department interest in efficiency outweighed the employee interest in protected activities. In order for the Pickering balancing test to be relevant appellants must have produced evidence to show that the speech of Moore and Shockency adversely affected the efficiency of the sheriff's department. See Burnham, 119 F.3d at 678. Appellants assert that they need not show "actual disruption," but only that "the ordinary or foreseeable effect of the conduct" would be to disrupt department efficiency, relying on Wright v. Illinois Dept. of Children and Family Services, 40 F.3d 1492 (7th Cir. 1994), quoting Patkus v. Sangamon-Cass Consortium, 769 F.2d 1251, 1258 (7th Cir. 1985). Although law enforcement predictions of disruption are due some deference, the Pickering balancing test only need be conducted if a government employer has produced evidence of workplace disruption. See, e.g., Kincade v. City of Blue Springs, Mo., 64 F.3d 389, 398 (8th Cir. 1995) (bare

-9-

allegations that speech negatively impacted workplace efficiency insufficient to reach Pickering balancing test); Buzek v. County of Saunders, 972 F.2d 992, 997 (8th Cir. 1992); Burnham, 119 F.3d at 680 (no qualified immunity since defendant offered no evidence of disruption).

Qualified immunity cannot be based on "a simple assertion by the employer . . . without supporting evidence" of the adverse effect of the speech on workplace efficiency. Grantham v. Trickey, 21 F.3d 289, 295 n.4 (8th Cir. 1994). Here, appellants failed to support their claim that the workplace was disrupted by the protected activities of Moore and Shockency. Nothing in Fletcher's deposition testimony suggests that Moore's campaign disrupted the department's efficiency, and Fletcher himself testified that Moore was transferred because of his communication problems and Shockency for budget concerns and reorganization priorities. Fletcher points to Moore's deposition testimony that coworkers in the apprehension unit tried to provoke him, but this evidence was insufficient to show disruption within the department. The circumstances here are similar to those in Pickering, where allegations of disruption were not established by supporting evidence. Pickering, 391 U.S. at 571; see also; Powell v. Basham, 921 F.2d 165, 167 (8th Cir. 1990).

Fletcher and O'Hara are entitled to qualified immunity if at the time of their actions the applicable law was not clearly established such that a reasonable officer could have known that his actions violated the constitutional rights of Moore and Shockency. See Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989). It was clearly established that deputies to the sheriff were free to speak on matters of public concern without fearing adverse employment actions. Powell, 921 F.2d at 167; Buzek, 972 F.2d at 997. Showing that this right is clearly established in the abstract is not enough, however; a "particularized" showing must be made that a "reasonable officer would understand that what he is doing violates that right." Runge v. Dove, 857 F.2d 469, 472 (8th Cir. 1988), quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

We first address whether a reasonable officer would have known in 2002 that the actions taken by O'Hara amounted to constitutional violations. Moore argues that O'Hara criticized him in writing and placed reprimands in his file for routine actions which other officers were allowed to do without criticism, ordered him to record how he spent all of his time, and required him to stay in the office except for lunch at noon. For the unconstitutionality of an action to be clearly established, the "unlawfulness must be apparent." Anderson, 483 U.S. at 640. The law defining adverse employment actions is fact intensive, and there are no clear guidelines between demotions, suspensions, or terminations at one end of the spectrum and conduct at the other end which is not actionable, such as general hostility. While O'Hara's treatment of Moore diminished his job satisfaction it was not significantly more severe than exhibiting general hostility which is insufficient to be an adverse employment action. See, e.g., Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006). We conclude that O'Hara is entitled to qualified immunity because the law was not clearly established that the actions he took toward Moore had employment consequences serious enough to amount to adverse employment actions.

Fletcher argues that it was not clearly established that the transfers were constitutional violations because Branti v. Finkel, 445 U.S. 507 (1980), creates an exception that protects his decisions. Under Branti, a government employer can take adverse employment actions against employees for protected First Amendment activities if they hold confidential or policymaking positions for which political loyalty is necessary to an effective job performance. Id. at 518. Some other circuits have determined that deputy sheriffs held policymaking positions and could be transferred for political reasons, but these cases are not controlling here because they turned on state law provisions in different jurisdictions. See, e.g., Jenkins v. Medford, 119 F.3d 1156, 1164 (4th Cir. 1997) (en banc) (intent of North Carolina general statutes controlling); Terry v. Cook, 866 F.2d 373, 377 (11th Cir. 1989) (Alabama law defines the relationship between sheriff and deputy sheriff).

-11-

The issue "is not whether the label 'policymaker' or 'confidential' fits a particular person," but whether political loyalty is an "appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518; Elrod, 427 U.S. at 351, 373 (chief deputy sheriff not a policymaker even though he supervised numerous employees); Bauer v. Bosley, 802 F.2d 1058 (8th Cir. 1986) (political loyalty necessary for legal advisor to elected clerk of court); Barnes v. Bosley, 745 F.2d 501, 505 (8th Cir. 1984) (political loyalty not necessary for employee performing only administrative duties).

Under Minnesota law the positions held by Moore and Shockency are in the classified service and are not based on political affiliation. Minn. Stat. §§ 383A.281, 383A.288. They are subject to open application and examination. Id. In contrast to these positions, the sheriff's chief deputy, three principal assistants, and the sheriff's personal secretary are in the unclassified service which permits discharge without cause with no right to a grievance appeal. Minn. Stat. § 383A.286. Ramsey County officials may not require classified service employees to contribute to campaign funds, or discipline them or retaliate against them if they choose not to contribute. Minn. Stat. § 383A.297. In addition, Minnesota statute §211B.09 prohibits public officials from using "official authority or influence" to compel employee participation in political activities or to "impose or enforce additional limitations on the political activities of [their] employees." The right of public employees to be free from coerced participation in political activity reasonably includes the right to participate willingly in the political sphere. The relevant Minnesota statutes were published and available to appellants, and the legislature's intent not to permit retaliation for political reasons was clearly expressed.

Moore and Shockency were also protected by a collective bargaining agreement that prohibited appellants from discriminating against them for their political beliefs and from disciplining or discharging them except for "just cause." See Minn. Stat. § 383A.294 (defined as "failure to perform assigned duties, substandard performance, misconduct, insubordination, and violation of written policies and procedures"). They

were two of many chief deputies in the department, and the record does not suggest that either of them had a close, exclusive relationship with the sheriff which necessitated confidentiality. Cf. Billingsley v. St. Louis County, 70 F.3d 61, 64 (8th Cir. 1995) (reasonable for legislator to require political loyalty from only administrative assistant). Chief deputy Metusalem testified that Fletcher excluded Moore and Shockency from management meetings with his closest associates while policy was developed.

For these reasons, we conclude a reasonable official would not have thought that Moore and Shockency held policymaking positions and could not have reasonably relied on that exception in taking adverse employment actions against them. We conclude that the law on these issues was clearly established, and the district court did not err in concluding that Fletcher was not entitled to qualified immunity.

## III.

Ramsey County seeks to appeal the denial of its motion for summary judgment. It claims it was entitled to summary judgment under Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978), and argues that this court has jurisdiction over its appeal. A denial of summary judgment based on a Monell defense is not an appealable order under Swint v. Chambers County Commission, 514 U.S. 35, 43 (1995), unless the defense is intertwined with a qualified immunity defense. Eagle v. Morgan, 88 F.3d 620, 628-29 (8th Cir. 1996). Ramsey County argues that we have jurisdiction because its liability is premised upon Fletcher's liability as a final decisionmaker for it so the county cannot be held liable if he is entitled to qualified immunity. Given our conclusion that Fletcher is not entitled to qualified immunity, we need not consider the county's "inextricably intertwined" argument. See Kincade, 64 F.3d at 394. We conclude that we have no jurisdiction to address the county's immunity defense on this interlocutory appeal.

-13-

IV.

Accordingly, we affirm the order of the district court denying Sheriff Fletcher qualified immunity on the First Amendment claims of Moore and Shockency, reverse its order denying O'Hara qualified immunity on Moore's First Amendment claim, dismiss the county's appeal for lack of jurisdiction, and remand for further proceedings consistent with this opinion.

_____