SHEPHERD, Circuit Judge,
dissenting.
I respectfully dissent from the majority’s reversal of the district court. The majority states that in order to determine whether Nord’s free speech rights were clearly established it is necessary to decide whether “his particular speech was protected by the First Amendment.” Ante at 739. However, Wild has conceded that Nord’s speech was protected and that he terminated Nord for exercising his First Amendment rights, and the majority has accepted this concession. Thus, we need not determine anew whether Nord’s speech was protected. After Wild’s concession, and the majority’s acknowledgment that Nord’s First Amendment rights had been violated, the sole remaining question under qualified immunity review is whether Nord’s right — to engage in protected campaign speech directed against his opponent and boss without being terminated — was clearly established, a question to which an analysis under the two-step Pickering/Connick balancing test is unwarranted. Because Nord’s rights were clearly established, and because the El-rod/Branti exception does not apply, I would affirm the denial of qualified immunity.
I.
As the majority notes, the qualified immunity inquiry is two-fold: (1) whether the facts asserted demonstrate a violation of plaintiffs constitutional right and (2) whether such right was clearly established at the time of the defendant’s conduct. Winslow v. Smith, 696 F.3d 716, 731 (8th Cir.2012). Under the first step, we must determine whether Wild violated Nord’s constitutional right. Id. The answer to that question is clear. Wild, in his brief to the district court and during oral argument before this court, conceded “solely for purposes of summary judgment, that Nord was terminated for his election campaign speech — or put another way, Nord was terminated for exercising First Amendment rights.” Therefore, I agree with the majority’s conclusion that, for purposes of further inquiry, the first prong of the qualified immunity analysis has been established.[5]
I part with the majority’s reasoning, however, in its treatment of the second prong of the qualified immunity analysis. There, the majority relies on Sexton v. Martin, 210 F.3d 905, 908 (8th Cir.2000), and applies the Pickering/Connick balancing test to ascertain whether Nord’s speech was protected by the First Amendment, a question already answered in the affirmative by Wild’s concession, which the majority has accepted. Moreover, inquiry under the Pickering/Connick balancing test does not occur at the second step of the qualified immunity analysis but appropriately occurs at the first step to determine whether a constitutional violation occurred.
*746 In adverse employment actions involving the First Amendment and the qualified immunity defense, the Pickering/Connick test is employed to determine whether an employee suffered an adverse employment action for engaging in constitutionally protected activities. See Rankin v. McPherson, 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). Accordingly, by applying the Pickering/Connick test, we analyze whether an employee’s First Amendment rights were violated, a determination that occurs at the first step of the qualified immunity analysis. Although the majority relies on this court’s qualified immunity framework in Sexton, Sexton contains an unfortunate description of the qualified immunity analysis that erroneously misplaces the application of the Pickering/Connick test in the second half of the analysis. Such placement does not fit squarely with binding authority in this circuit.
For example, in Kincade v. City of Blue Springs, Missouri, the case that the Sexton Court relied on for its analytical framework, we first analyzed whether the employee was discharged for expressing constitutionally-protected speech.[6] 64 F.3d 389, 395 (8th Cir.1995). The court determined, applying the Pickering/Con-nick test, that the speech was in fact protected and a constitutional violation occurred when the employee was discharged from his employment based on his speech. Id. at 396-98. We then proceeded to determine whether the employee’s right to utter constitutionally-protected speech was clearly established. Id. at 398. Thus, proper application of the Pickering/Con-nick test determines whether the employee’s rights were violated, not whether the right was clearly established.
Even prior to Kincade, this circuit employed the Pickering/Connick test solely to determine whether there was a constitutional violation. See Dunn v. Carroll, 40 F.3d 287, 291 (8th Cir.1994); see also Lewis v. Harrison Sch. Dist. No. 1, 805 F.2d 310, 316 (8th Cir.1986); Brockell v. Norton, 732 F.2d 664, 667 (8th Cir.1984). Indeed, more recently, we have continued to apply the Pickering/Connick test when determining whether a constitutional violation occurred. See, e.g., Shockency v. Ramsey Cnty., 493 F.3d 941, 948 (8th Cir. 2007); Lindsey v. City of Orrick, Mo., 491 F.3d 892, 898 (8th Cir.2007) (proceeding to the second step of the qualified immunity analysis after determining that, under the Pickering/Connick test, the employee had successfully asserted a constitutional violation under the first step); Hinshaw v. Smith, 436 F.3d 997, 1004, 1008 (8th Cir. 2006) (determining that because there was no constitutional violation under the Pickering/Connick test, there was no need to determine whether the right was clearly established). Accordingly, the Pickering/Connick test properly determines the first step of the qualified immunity analysis. Although, as the majority notes, the *747 Pickering/Connick test may be considered when determining whether a right was clearly established, such consideration only occurs once the Pickering/Connick test has already been put into play when determining whether a constitutional violation occurred. See Kincade, 64 F.3d at 398 (“‘[W]hen Pickering’s, fact-intensive balancing test is at issue, the asserted First Amendment right can rarely be considered ‘clearly established’(alteration in original) (emphasis added) (quoting Buzek v. Cnty. of Saunders, 972 F.2d 992, 997 (8th Cir.1992)); see also Lindsey, 491 F.3d at 901 (rejecting the employer’s argument that the employee’s right was not clearly established under the Pickering balancing test because the Pickering balancing test had not been placed in issue when analyzing whether a constitutional violation occurred)).
Because the Pickering/Connick test informs the first step of the qualified immunity analysis and the majority has already acknowledged that the first step has been met, in my opinion, the majority erred in stating that “we must determine whether or not Nord’s particular speech was protected by the First Amendment,” ante at 739, and, thus, was mistaken in its conclusion that, under the Pickering/Connick balancing test, Nord’s rights were not clearly established. Consistent with a proper qualified immunity framework, I would hold that Nord’s First Amendment rights were clearly established and the qualified immunity defense fails.
We have said that “[n]o right is more clearly established in our republic than freedom of speech.” Casey v. City of Cabool, Mo., 12 F.3d 799, 804 (8th Cir.1993). “ ‘[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.’ ” Burson v. Freeman, 504 U.S. 191, 196, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (quoting Eu v. S.F. Cnty. Democratic Cent. Comm., 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (internal quotation marks omitted)); see Duckworth v. Ford, 995 F.2d 858, 861 (8th Cir.1993) (concluding that it was clearly established that the employee’s opposition to his employer’s candidacy and his support of another person’s was protected by the First Amendment). We have consistently held that where a law enforcement officer’s speech does not adversely affect the workplace, the right to utter such speech is clearly established. See Buzek, 972 F.2d at 997; Powell v. Basham, 921 F.2d 165, 168 (8th Cir.1990) (per curiam). Here, because Wild fired Nord for engaging in campaign speech having no adverse effect on the sheriffs office, Nord’s right to express his speech during the campaign without suffering an adverse employment action was clearly established.
Wild’s solicitation of the advice of counsel does not bolster his argument that Nord’s rights were not clearly established. While Wild’s reliance on counsel’s advice may be a factor in the qualified immunity analysis, see Kincade, 64 F.3d at 399, the counsel must be properly informed so that the legal parameters can be fully explained, Watertown Equip. Co. v. Norwest Bank Watertown, N.A., 830 F.2d 1487, 1495 (8th Cir.1987); see also Lindsey, 491 F.3d at 901-02. It is clear that Wild failed to inform counsel that he intended to enforce the “unwritten rule” that a deputy who runs against the sheriff in an election will be fired if the sheriff wins. Counsel admitted that had Wild told her this information, she would have given it more thought and advised accordingly.
II.
Even if we were to refuse to accept Wild’s concession and apply the Pickering/Connick test under the first step of the qualified immunity analysis, a constitution *748 al violation still occurred. The majority makes no decision as to whether all of Nord’s campaign statements were matters of public concern but instead concludes that, even if all Nord’s speech merits protection, it was reasonable for Wild to believe that the speech would be potentially disruptive to the sheriff’s office. We, however, have consistently required evidence demonstrating workplace disruption before the interests of the employee and the employer are balanced. See, e.g., Shockency, 493 F.3d at 949-50; Hall v. Mo. Highway & Transp. Comm’n, 235 F.3d 1065, 1068 (8th Cir.2000); Burnham, v. Ianni, 119 F.3d 668, 678 (8th Cir.1997) (en banc); Kincade, 64 F.3d at 398; Dunn, 40 F.3d at 293. “Mere allegations [that] the speech disrupted the workplace or affected morale, without evidentiary support, are insufficient.” Lindsey, 491 F.3d at 900.
As the majority notes, in some situations an employer need not wait for the adverse effects of certain speech to manifest prior to taking an employment action, such as when it is “reasonably believed [the speech] would disrupt the office, undermine his authority, and destroy close working relationships.” Connick, 461 U.S. at 154, 103 S.Ct. 1684. This is not such case. There is no evidence in the record providing a reasonable basis for Wild’s belief that disruption would occur. In fact, Wild testified that, during the campaign period, there were no complaints about how the office was run nor were there any communication problems between the employees. Moreover, Wild agreed that all the employees acted professionally during the campaign.
Importantly, Nord was fired after the campaign and the election. Accordingly, at the time of Nord’s firing, any speech that could potentially disrupt the workplace had already been uttered, and, as evidenced by the record and Wild himself, Nord’s campaign speech had not affected the morale nor the professionalism of the employees. Moreover, Wild concedes that he not only fired Nord for his campaign speech, but also fired Nord for running against him. This concession further demonstrates that after the election, Wild’s motivation for firing Nord was the so-called “unwritten rule” rather than any potential disruption due to Nord’s speech.
“[I]f the defendants have failed to produce evidence weighing against permitting the employee’s expressive conduct, or if there is a question of fact as to whether they reasonably believed the conduct to be disruptive, then the defendants are not entitled to qualified immunity.” Dunn, 40 F.3d at 293 (citations omitted). Here, there is no evidence of disruption or at most, there is a question of fact as to whether Wild reasonably believed Nord’s conduct would be disruptive. Thus, even if we forgo Wild’s concession, I would hold that Wild violated Nord’s clearly established constitutional right to engage in campaign speech. See Buzek, 972 F.2d at 997.
III.
I also part with the majority’s conclusion that Nord held a confidential position. The majority, in reliance on Hinshaw, determined that the Pickering/Connick test applies rather than the Elrod/Branti exception because this case involves both speech and political affiliation. Although an employee’s status as a policymaking or confidential employee is a factor that weighs in favor of the employer under the balancing prong of the Pickering/Connick test, that test is not at play in this case due to Wild’s concession. And, even if applied, Appellants have failed to produce sufficient evidence in order to trigger the balancing test. Thus, whether Nord is a confidential or policymaking employee is of no consequence.
*749 Even if we were to consider Nord’s positional status and apply the Elrod/Branti test instead, I find unpersuasive the majority’s reliance on a Fourth Circuit case in determining that Nord holds a position of confidence. This court has acknowledged that although “other circuits have determined that deputy sheriffs held policymak-ing positions and could be transferred for political reasons, ... these cases are not controlling here because they turned on state law provisions in different jurisdictions.” Shockency, 493 F.3d at 950-51. We have to look to the applicable state laws and the actual duties assigned to deputy sheriffs in Walsh County, North Dakota to determine whether political affiliation is essential to Nord’s effective performance of his position as deputy sheriff. Id. at 951; Billingsley v. St. Louis Cnty., 70 F.3d 61, 64 (8th Cir.1995).
Here, Nord’s duties included the routine tasks of general police work, prevention and detection of crime, protection of life and property, and the performance of duties as assigned. Nothing in the Walsh County Deputy Sheriffs job description empowers the deputy with any discretionary function nor can it be said, based on this job description, that the deputy sheriff “ ‘performs virtually all the duties attendant to the actual duties of the sheriff himself.’ ” Horton v. Taylor, 767 F.2d 471, 475 (8th Cir.1985) (quoting McBee v. Jim Hogg Cnty., Tex., 703 F.2d 834, 839 (5th Cir. 1983), on reh’g, 730 F.2d 1009 (5th Cir. 1984)). Viewing the deputy sheriff and sheriffs relationship in the abstract is insufficient to establish the type of relationship necessary under Elrod/Branti.
Indeed, North Dakota case law acknowledges that “the official acts of a deputy sheriff are the acts of the sheriff.” Turnquist v. Kjelbak, 77 N.W.2d 854, 857 (N.D. 1956). This broad statement, however, says nothing about the discretionary functions of a deputy nor whether the deputy handles confidential matters, but rather establishes that the deputy is essentially the sheriffs agent and, thus, the sheriff is responsible for the deputy’s acts. As we said in Horton, the “Branti test is a functional one, focusing on the actual duties an employee performs.” Horton, 767 F.2d at 477 (emphasis added). Thus, the focus should not be on whether an agency exists but on the actual duties assigned within that agency. Here, those duties did not include any assistance in making policies nor did it involve any tasks requiring political loyalty to the sheriff.
“Branti requires that a distinction be drawn between political loyalty and other kinds.” Id. at 476. It is one thing to say “that partisan feelings will so affect an employee’s work that his effectiveness and efficiency will be influenced,” and another that “raw political patronage” alone justifies a dismissal. Id. at 477. Because Nord’s position as a deputy was not highly discretionary, policymaking, or confidential and because, as evidenced from the record, Nord’s campaign against the sheriff did not adversely affect his effectiveness or efficiency as a deputy — Nord’s tasks, at best, involved general police work — Nord was fired simply for running against Wild and not because “party affiliation is an appropriate requirement for the effective performance of [Nord’s job].” Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Accordingly, Nord’s dismissal is more akin to a dismissal based on raw political patronage and such dismissals are not enough to satisfy the Elrod/Branti exception. Horton, 767 F.2d at 477. Finally, the fact that Nord may have been an at-will employee does not mean he can be fired in violation of his constitutional rights. O’Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 725-26, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).
*750 IV.
Nord was fired in violation of his First Amendment rights which were clearly established under the law. He did not hold a confidential or policymaking position, nor is political affiliation essential to the performance of his duties. Accordingly, the Appellants have failed to satisfy the elements of the qualified immunity defense.

. Despite our discretion to decide which of the two prongs of the qualified immunity analysis to address first, Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), both the majority and I have chosen to begin with and accept as established the first step of the qualified immunity analysis. As such, we have accepted that a constitutional violation has occurred and, thus, have already determined that Nord’s speech was indeed protected. Accordingly, Wild, through his concession and our acceptance of that concession, in my opinion, has not placed the Pickering/Connick test at issue.

. As we have previously explained,
Courts addressing claims by public employees who contend that they have been discharged for exercising their right to free speech must employ a two-step inquiry. Dunn v. Carroll, 40 F.3d 287, 291 (8th Cir. 1994). First, the court must determine whether the speech may be described as "speech on a matter of public concern.” Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If so, the second step involves balancing the employee's right to free speech against the interests of the public employer. Rankin, 483 U.S. at 388, 107 S.Ct. 2891 (citing Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). The focus is on striking “a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer] in promoting the efficiency of the public services it performs through its employees.” Pickering, 391 U.S. at 568, 88 S.Ct. 1731.
Kincade, 64 F.3d at 395.