# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3676

_____

Donna Williams

*Plaintiff*

Linda Jenkins

*Plaintiff - Appellee*

v.

Frederick P. Tucker, Judge, in his Official Capacity and in his Individual Personal Capacity

*Defendant - Appellant*

Kevin Shoemaker, Sheriff, in his Individual Personal Capacity

*Defendant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: January 11, 2017
Filed: May 23, 2017

_____

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Linda Jenkins was reduced to part time employment as the bailiff in a county courthouse shortly after the election of Frederick Tucker as presiding circuit judge. Jenkins sued Tucker and the county sheriff, alleging that she had been unlawfully retaliated against for supporting the losing candidate for presiding judge. The district court[1] granted summary judgment to the sheriff but denied it to Tucker, who filed this interlocutory appeal. We affirm.

I.

Linda Jenkins began working as a deputy sheriff in Macon County, Missouri in 1998. Within a year she was working two part time positions: both as a road deputy patrolling the county and as a bailiff providing security in the Macon County courthouse located in Missouri's 41st judicial district. Jenkins began working full time as a bailiff in 2003, while remaining a commissioned deputy sheriff. The presiding circuit judge arranged for her salary to move from the sheriff's budget to the court budget "to ensure that she would be available for courtroom security at all times as the Courts . . . were in session."

This presiding circuit judge retired in early 2011, and the governor appointed Frederick Tucker to fill the vacancy. Tucker ran for reelection in 2012 against associate circuit judge Philip Prewitt. Jenkins supported Prewitt in the election and had his campaign sign placed on her property. Tucker won the November 2012 election, however, and reportedly told Jenkins, who was still working full time as the court's bailiff, that he "want[ed] somebody that supports [him]" working for him.

As presiding circuit judge, Tucker was responsible for approving the budgets for the court and the sheriff. When he transmitted the budgets to the county

_____

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

-2-

commissioners for approval shortly after the election, he moved Jenkins' salary from the court budget and placed it back into the sheriff's budget without notifying Jenkins. The county commissioners then decreased the sheriff's personnel budget by $18,869.59, an amount slightly less than Jenkins' annual salary.

No minutes from the county commissioner meeting indicated any discussion of the bailiff position or its potential impact on the requested budgets. The newly elected sheriff, Kevin Shoemaker, said that the commissioners had explained to him that Jenkins should be included in his budget and could work as either a part time bailiff or a full time road deputy. Sheriff Shoemaker then gave Jenkins the option of taking one of those two positions or retiring, and Jenkins chose to work as a bailiff part time. This change in her employment status resulted in Jenkins losing her health insurance coverage as well as her social security and retirement benefits.

Jenkins brought this action under 42 U.S.C. § 1983 against Tucker and Shoemaker in their individual and official capacities for retaliating against her for having supported associate judge Prewitt in the election. The defendants moved for summary judgment on the basis of qualified immunity. The district court granted Shoemaker summary judgment after concluding that Jenkins had failed to present evidence that Shoemaker knew she had supported Prewitt or taken any retaliatory action against her. The district court denied Tucker summary judgment after concluding that Tucker's statement that he "wants somebody who supports [him]" provided direct evidence of retaliatory motive. The court also concluded that whether the budget transfer caused an adverse employment action presented a material issue of fact. Tucker appeals the denial of qualified immunity.

II.

We review "the denial of summary judgment based on qualified immunity de novo, viewing all evidence in a light favorable to the non moving parties."

-3-

Shockency v. Ramsey Cty., 493 F.3d 941, 948 (8th Cir. 2007). A state official is entitled to summary judgment on the basis of qualified immunity unless (1) the "facts taken in the light favoring the nonmoving party show that the official's action violated a constitutional right" and (2) that right "was clearly established" at the time of the violation. Id. at 947. On such an interlocutory appeal, our review is limited to determining purely legal issues such as "whether a reasonable fact-finder could find a violation of plaintiff['s] rights" and "whether the law establishing the violation was clearly established at the time in question." S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015). We lack jurisdiction to review issues such as "which facts a party may, or may not, be able to prove at trial." Id. at 339 (quoting Johnson v. Jones, 515 U.S. 304, 313 (1995)).

A.

Jenkins alleges that she was unlawfully retaliated against for supporting associate circuit judge Prewitt for the presiding circuit judge. To avoid summary judgment on that retaliation claim, she must present "direct evidence" of retaliation or follow "the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P., 444 F.3d 961, 964–65 (8th Cir. 2006). Under the burden shifting framework, a plaintiff must "set forth a prima facie case in order to shift the burden of producing a legitimate, [nonretaliatory] reason for the employment decision to the employer." Id. If the employer provides a nonretaliatory reason, "then the employee must prove that the reason is a pretext for the [retaliation]." Id. at 965. Here, we need not determine whether Jenkins has provided "direct evidence" of retaliation because she has put forward a claim by means of the burden shifting analysis.

To establish a prima facie case of retaliation, a plaintiff must show that "she participated in a protected activity, that an adverse employment action was taken against her, and that there was a causal connection between the protected activity and

-4-

the adverse employment action." Graning v. Sherburne Cty., 172 F.3d 611, 615 (8th Cir. 1999). In this case the parties agree that Jenkins has shown that she engaged in protected speech by supporting associate judge Prewitt in the election.[2] They disagree, however, as to whether she has shown that she suffered an adverse employment action retaliating for her protected speech.

To show an adverse employment action, a plaintiff must establish that she experienced "a material change in the terms . . . [of] employment" or "a tangible change in duties or working conditions that constitute a material disadvantage." Jones v. Fitzgerald, 285 F.3d 705, 713 (8th Cir. 2002) (citations omitted). Here, Tucker reacted to Jenkins' support of a rival candidate by moving her salary from the court budget to the sheriff's budget. After that adjustment the county commissioners decreased the sheriff's personnel budget by a little less than Jenkins' salary. Jenkins was then given the option of retiring, working part time as a bailiff, or working full time as a road deputy. She chose part time employment, and thereafter lost her health insurance coverage as well as her social security and retirement benefits. The loss of all these benefits amounted to material changes in the terms of her employment. See Meyers v. Starke, 420 F.3d 738, 744 (8th Cir. 2005) (stating that changes in "salary, benefits, or responsibilities" exemplify adverse employment actions).

Tucker argues that Jenkins could have accepted the road deputy position and not experienced an adverse employment action. Although "a purely lateral transfer, that is a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action," there is a factual dispute in this case as to whether serving as a road deputy would amount to a lateral transfer or a

---

[2]We note that our court recently clarified the standard under which such claims should be analyzed. See Thompson v. Shock, 852 F.3d 786, 792 (8th Cir. 2017). Because the parties did not dispute whether Jenkins engaged in protected activity before the district court or on appeal, we see no need to remand for further consideration in light of our decision in Thompson.

demotion. See Jones, 285 F.3d at 714 (quoting Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)). If the record is construed in the light most favorable to Jenkins, the road deputy position involved major changes in working conditions. It was held by many more deputy sheriffs and was less prestigious. Such factors may show that the transfer was a demotion and thereby an adverse employment action. See Tadlock v. Powell, 291 F.3d 541, 546–47 (8th Cir. 2002). Whether Jenkins would have remained working part time as a bailiff or full time as a road deputy, either change could have amounted to an adverse employment action.

Jenkins has also provided evidence from which a reasonable fact finder could infer that Tucker was causally connected to that adverse employment action. Often "the issue of causal connection is . . . fact-intensive" and best left for the ultimate fact finder. See Lyons v. Vaught, 781 F.3d 958, 963 (8th Cir. 2015). That is the case here. Tucker admitted that he knew there was a Prewitt campaign sign on Jenkins' property, and the adverse employment action occurred within one month after his allegedly telling Jenkins that he wanted an employee who had supported him. The "timing of [Jenkins'] reassignment coupled with evidence of [Tucker's] statements" near the time of the reassignment could give rise to an inference of unlawful retaliation. See Meyers v. Neb. Health & Human Servs., 324 F.3d 655, 659 (8th Cir. 2003).

Tucker argues that if Jenkins experienced any adverse employment action, it was because the county commissioners had independently decided to reduce the sheriff's budget. Jenkins has, however, provided circumstantial evidence that Tucker was involved in the county commissioners' decision to reduce the sheriff's budget. Our review of Tucker's involvement in that decision is "constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision." Thompson v. Murray, 800 F.3d 979, 983 (8th Cir. 2015). Here, the district court did not explicitly state how Tucker was involved in the budget reduction beyond that his decision to transfer Jenkins' salary "started th[e] ball rolling." The question of the

extent of his involvement is therefore determined "by viewing the record in the light most favorable" to Jenkins.  See Thompson, 800 F.3d at 983.

In its oral decision, the district court made two comments immediately following its statement that the transfer "started th[e] ball rolling" which, viewing the record in the light most favorable to Jenkins, could support a conclusion that Tucker was involved in the budget reduction decision.  First, the court noted that the commissioners and sheriff "mysteriously determined they only needed a part-time bailiff."  From this, the court likely assumed that it was unlikely that the sheriff and county commissioners would determine off the record that they needed only a part time bailiff when that decision would most intimately impact the circuit judges. Second, the court noted that the circuit judges were "by statute in charge of the sheriff's hiring and paying of deputies," further suggesting that Tucker would have been involved in any discussion about a reduction in Jenkins' bailiff duties.  See Mo. Rev. Stat. § 57.230; Gaines v. Grimm, 555 S.W.2d 11, 12–13 (Mo. 1977).  Based on these facts, the district court likely assumed for purposes of deciding the motion that Tucker was involved in the decision to change the terms of Jenkins' employment.

Taking the facts stated and likely assumed by the district court as given, see Johnson, 515 U.S. at 313, Jenkins has provided evidence of a prima facie case of retaliation and a pretextual explanation for the adverse employment action. Based on those assumed facts, we conclude that Jenkins has provided sufficient evidence for a reasonable fact finder to conclude that Tucker violated Jenkins' right to support an electoral candidate of her choice.[3]

---

[3]Given our conclusion that Tucker is not entitled to summary judgment on the basis of qualified immunity, "we need not consider [his] 'inextricably intertwined' argument" regarding the official capacity claim.  Shockency, 493 F.3d at 952.

-7-

B.

Tucker argues that even if he violated Jenkins' First Amendment right to support an electoral candidate, the contours of that right were not clearly established at the time of any such violation. Tucker frames the right at issue as the right to remain a full time court employee, but the issue is properly characterized as whether Tucker impermissibly retaliated against Jenkins by causing her to become a part time employee. It is clearly established "that a government employer cannot take adverse employment actions against its employees for exercising their First Amendment rights" by participating in electoral activities. Shockency, 493 F.3d at 948. This right was clearly established at the time of the alleged violation.

III.

For these reasons we conclude that the district court did not err in denying Tucker summary judgment on the basis of qualified immunity.