# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-2961
_____

John W. Burns; Tyler L. Clark; Michael S. Denton; Joseph A. Gallant, III; Keith Mills; Michael A. Wells

*Plaintiffs - Appellants*

v.

Brad Cole; Christian County, Missouri; Ray Weter; Hosea Bilyeu; Ralph Phillips

*Defendants - Appellees*

_____

No. 20-3284
_____

Gary Klossing

*Plaintiff - Appellant*

v.

Brad Cole; Christian County, Missouri; Ray Weter; Hosea Bilyeu; Ralph Phillips

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 22, 2021
Filed: November 29, 2021

_____

Before SHEPHERD, WOLLMAN, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

John Burns, Tyler Clark, Michael Denton, Joseph Gallant, Keith Mills, Michael Wells, and Gary Klossing (Appellants) were formerly employed as deputy sheriffs by the Christian County Sheriff's Office. Brad Cole either terminated or demoted each Appellant shortly after being elected Christian County's new sheriff. Appellants each brought 42 U.S.C. § 1983 actions against Cole, Christian County, and the Christian County Commissioners (Appellees), alleging violations of their First Amendment rights by Cole's retaliatory employment actions taken after Appellants supported his political opponent. The district court[1] granted Appellees' motions for summary judgment against each Appellant, dismissing Appellants' complaints. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 2015, the Christian County Commission scheduled a special election to elect a new sheriff after the outgoing sheriff resigned. Four candidates ran for sheriff in the general election, including Brad Cole and Keith Mills. Many of the Sheriff's Office's employees supported Mills, the only candidate then employed by the Sheriff's Office.

Appellants, employed as Christian County deputy sheriffs, publicly endorsed Mills. John Burns and Tyler Clark posted on social media, and each displayed a yard sign at his residence. Michael Denton told people he supported Mills if they asked. Joe Gallant posted on social media, made videos, and talked to family and friends about Mills. Mike Wells donated money, posted on social media, canvassed door to door, handed out fliers, wore campaign t-shirts, and appeared at events. Gary

---

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

Klossing posted on social media, visited polling stations, wore a campaign t-shirt, and attended a campaign event.

Cole won the election on August 4, 2015, and three days later he assumed the duties of sheriff. On August 7, the day Cole took office, he terminated Mills, Clark, Denton, and Gallant, and he demoted Burns.[2] Three days after he took office, Cole terminated Wells. And on August 28, Cole terminated Klossing. Cole knew when he took adverse actions against Appellants that they had supported Mills.

Appellants each filed suit under § 1983 against Cole in his official and individual capacities, Christian County, and the Christian County Commissioners. Appellants alleged violations of their First Amendment rights. Specifically, Appellants alleged that Cole wrongfully took retaliatory actions against them for their constitutionally protected political activities in opposition to Cole.

Appellees filed motions for summary judgment against each Appellant, which the district court granted. The district court determined that Curtis v. Christian County required summary judgment in favor of Appellees. 963 F.3d 777 (8th Cir. 2020). Curtis involved two other Christian County deputy sheriffs who were similarly discharged by Cole after they campaigned against him before the special election. Id. at 781. Like Appellants, these terminated deputy sheriffs alleged that Cole discharged them in violation of their First Amendment rights. See id. at 782. In Curtis, we reversed the district court's denial of qualified immunity for Cole, finding that Cole did not violate the former deputy sheriffs' First Amendment rights because political loyalty is an appropriate requirement for deputy sheriffs under Missouri law.[3] Id. at 788-89 ("Curtis and Bruce, in their role as Missouri deputy

_____

[2]Burns resigned from the Sheriff's Office later the same month.

[3]Some additional detail may explain why Appellants' claims were not already resolved by this Court in Curtis. Appellant Klossing filed suit in 2017, one week before the Curtis deputy sheriffs. The district court set Klossing's trial for the same day as the Curtis deputy sheriffs' trials, and it initially denied Appellees' motion for

sheriffs, held 'policymaking positions for which political loyalty is necessary to an effective job performance' . . . ."). Following <u>Curtis</u>, the district court here concluded that Cole did not violate Appellants' First Amendment rights for the same reason. Because the district court found that Cole, a municipal employee, did not violate Appellants' constitutional rights, it decided that Christian County and the Commissioners, as the municipality, were also entitled to summary judgment. Appellants now appeal.[4]

## II.

Appellants assert that the district court erroneously granted summary judgment to Appellees based on qualified immunity. Appellants argue that they have shown a violation of their clearly established First Amendment rights because Cole took adverse actions against them based on their public support of his opponent in the sheriff's election. According to Appellants, they hold positions which cannot require political loyalty and the district court disregarded Missouri law that protects their right to engage in political activity without fear of reprisal. "We review de novo the district court's grant of summary judgment on the basis of [qualified] immunity." <u>Young v. Mercer Cnty. Comm'n</u>, 849 F.3d 728, 732 (8th Cir. 2017).

---

summary judgment against Klossing the same week it denied their summary judgment motions against the <u>Curtis</u> deputy sheriffs. However, Appellees failed to timely appeal the denial of their summary judgment motion against Klossing. After we decided <u>Curtis</u>, the district court granted Appellees' motion for reconsideration against Klossing and entered summary judgment in favor of Appellees. The other six Appellants (Burns, Clark, Denton, Gallant, Mills, and Wells) individually filed suit in 2018, and the district court consolidated their cases for discovery. After <u>Curtis</u>, the district court granted Appellees' motions for summary judgment against the six Appellants. We consolidated the seven Appellants' appeals.

[4]In addition to Appellants' primary argument that Cole is not entitled to qualified immunity, they also ask this Court to remand because the district court did not address affirmative defenses raised against Appellant Wells regarding his bankruptcy.

-4-

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. at 735 (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). "Qualified immunity analysis requires a two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Morgan v. Robinson, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). And "[u]nless both of these questions are answered affirmatively, an appellant is entitled to qualified immunity." Id. Courts can "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. In assessing Cole's claim of qualified immunity, we begin with the first prong and consider whether a constitutional violation occurred.

We generally recognize that "[a] State may not condition public employment on an employee's exercise of his or her First Amendment rights." Thompson v. Shock, 852 F.3d 786, 791 (8th Cir. 2017) (quoting O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 717 (1996)). "With a few exceptions, the Constitution prohibits a government employer from discharging or demoting an employee because the employee supports a particular political candidate." Id. (quoting Heffernan v. City of Paterson, 578 U.S. 266, 270 (2016)).

However, government employees' First Amendment right to support political candidates without fear of adverse action is not absolute. "The Supreme Court has developed two lines of cases that assess how to balance the First Amendment rights of government employees with the need of government employers to operate efficiently." Id. At issue here is the district court's application of the Elrod-Branti test, developed for "pure patronage dismissals." See Hinshaw v. Smith, 436 F.3d 997, 1005 (8th Cir. 2006); Elrod v. Burns, 427 U.S. 347, 359-60, 375 (1976) (Stewart, J., concurring) (plurality opinion) (agreeing that subjecting a non-confidential, non-policymaking public employee to penalty for exercising his right of political association is tantamount to an unconstitutional employment condition);

Branti v. Finkel, 445 U.S. 507, 517-18 (1980) (reaffirming Elrod and holding that, when assessing whether party affiliation may be an acceptable basis for terminating a public employee, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved"). "The typical Elrod-Branti case involves the dismissal of an employee because of his or her political affiliations or support for certain candidates." Curtis, 963 F.3d at 783 (quoting Thompson, 852 F.3d at 791). "Under [the Elrod-Branti test], a government employer can take adverse employment actions against employees for protected First Amendment activities if they hold confidential or policymaking positions for which political loyalty is necessary to an effective job performance." Id. at 784 (quoting Shockency v. Ramsey Cnty., 493 F.3d 941, 950 (8th Cir. 2007)). To decide "whether political loyalty is an 'appropriate requirement for the effective performance of the public office involved,'" we focus "on the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." Id. (citations omitted).

This Court's application of the Elrod-Branti test in Curtis controls our analysis. Curtis contains near-identical facts as the appeals now before us. In Curtis, two Christian County deputy sheriffs publicly supported Mills during the special election. After Cole won, he terminated them, knowing that they had campaigned against him. The former deputy sheriffs brought the same claims against the same Appellees as Appellants do now. The district court denied Cole qualified immunity, and we reversed. This Court determined that Missouri deputy sheriffs hold "policymaking positions for which political loyalty is necessary to an effective job performance." Id. at 788 (citation omitted). Therefore, under the Elrod-Branti test, Cole was permitted to take adverse employment actions against the former deputy sheriffs, and by doing so, he did not violate their First Amendment rights. This Court "examined the role of a deputy sheriff under [Missouri] law to determine whether political loyalty is a requirement." Id. at 786. Looking at the role of a deputy sheriff under Missouri law, we offered five reasons why it requires political loyalty: (1) "Missouri sheriffs are elected"; (2) "Missouri deputy sheriffs assist the sheriff in the performance of his duties"; (3) Missouri sheriffs "are liable for their deputies'

actions"; (4) "Missouri deputy sheriffs are at-will employees who serve at the pleasure of the sheriff"; and (5) Missouri deputy sheriffs are "sworn to engage in law enforcement activities on behalf of the sheriff." Id. at 788-89 (citation omitted).

Appellants attempt to distinguish their present appeals from Curtis by highlighting a footnote in Curtis, which reads:

> Missouri law setting forth the political activity rights of "first responders" does not alter our analysis. . . . [Mo. Rev. Stat. § 67.145] is addressed to the political activity rights of "first responders." Neither Bruce nor Curtis submitted evidence that they are a "first responder," i.e., a "person trained and authorized by law or rule to render emergency medical assistance or treatment."

Id. at 789 n.7 (quoting Mo. Rev. Stat. § 67.145 (prohibiting political subdivisions from banning any first responder from engaging in political activities while off duty unless such political activity is otherwise prohibited by state or federal law and defining first responder to mean any person trained and authorized by law or rule to render emergency medical assistance or treatment, which "may include, but shall not be limited to . . . deputy sheriffs")). Appellants offer extensive evidence that, as deputy sheriffs, they were first responders under Missouri law.

In addition to Missouri's first responder statute, Appellants highlight two other state statutes that they interpret as further protecting their political activity rights and thus preventing political loyalty from being a job requirement. See Mo. Rev. Stat. § 115.637(6) (prohibiting employers from making or enforcing any order to prevent an employee from engaging in political activities); Mo. Rev. Stat. § 130.028 (prohibiting persons and organizations from discharging an employee based on his political beliefs or making contributions to a candidate a condition of employment).

Appellants also compare their former positions to the Minnesota deputy sheriffs in Shockency. In Shockency, Minnesota deputy sheriffs brought a § 1983

action against their sheriff, alleging that the sheriff's retaliatory employment actions after they campaigned against him violated their First Amendment rights. See 493 F.3d at 944. Examining Minnesota law, including a statute that prevents hiring deputy sheriffs based on political affiliation, we held that a reasonable official would not have thought Minnesota deputy sheriffs hold policymaking positions that require political loyalty. Id. at 951.

The district court rejected these arguments. The district court acknowledged Appellants' evidence that they were first responders while employed as deputy sheriffs. See R. Doc. 177, at 4 n.1. However, the district court then summarized the Curtis holding and explained that "[u]nder the Eighth Circuit's broad holding, even if [Appellant] is a first responder and other provisions of Missouri law protect against discharge for engaging in political activity, because he was a Missouri deputy sheriff, [Appellant] was legally terminated, and [Appellee] Cole did not violate [Appellant's] constitutional rights." R. Doc. 177, at 4 n.1.

The district court correctly interpreted our Curtis holding. Appellants misunderstand how we use state law when applying the Elrod-Branti test. Appellants filed federal § 1983 actions claiming violations of their First Amendment rights, not their Missouri statutory rights. Whether Cole violated Appellants' state statutory political activity rights is an inquiry separate from whether he violated their First Amendment rights. In such a § 1983 action, our consideration of state law is only for the purpose of determining the description and nature of a government employee's role. See Curtis, 963 F.3d at 786-87. The Seventh Circuit, deciding whether the nature of a Wisconsin deputy sheriff's job made political loyalty a valid qualification (thereby allowing termination on the basis of political affiliation), explained the relevance of state statutes for our inquiry: "This [state statute] is relevant to [the deputy sheriff's] appeal not because the statutory provisions may confer legally enforceable rights on him, an issue of state law that is not before us, but because they cast additional light on the nature of the sergeant's job." Fuerst v. Clarke, 454 F.3d 770, 772-73 (7th Cir. 2006).

This Court already examined Missouri law in Curtis when reviewing the role of a Missouri deputy sheriff and determining that political loyalty is a requirement for effective performance of the role. See 963 F.3d at 787-89. We see no need to replicate that review one year later. Even though the Curtis deputy sheriffs did not present sufficient evidence that they were first responders, this Court was aware that Missouri deputy sheriffs may serve as first responders with additional state political activity rights. See id. at 789 n.7. Nevertheless, we decided that Missouri deputy sheriffs hold "policymaking positions for which political loyalty is necessary." Id. at 789 (citation omitted). Our holding covers both Missouri deputy sheriffs who meet the state's first responder statutory definition and those who do not. We take no position regarding whether Appellants were first responders when employed as deputy sheriffs.

Appellants' comparison of their roles (and accompanying state law rights) to the Minnesota deputy sheriffs in Shockency is unpersuasive. Minnesota and Missouri have different statutory frameworks governing deputy sheriffs. We distinguished Missouri's statutory scheme from Minnesota's in Curtis, see 963 F.3d at 787-89, and Appellants offer no evidence that Missouri's statutory scheme for deputy sheriffs has changed since 2020. Because the district court did not err in concluding that Cole did not violate Appellants' First Amendment rights, there is no need to address the second prong of the qualified immunity analysis. The district court properly granted summary judgment based on qualified immunity.

Our conclusion that Cole committed no unconstitutional act necessarily resolves the municipal liability issue involving Christian County and the Christian County Commissioners, sued in their official capacities. "'[T]here must be an unconstitutional act by a municipal employee' before a municipality can be held liable." Muir v. Decatur Cnty., 917 F.3d 1050, 1054 (8th Cir. 2019) (citation omitted). Because Cole committed no unconstitutional act, no municipal liability can attach to Christian County and the Commissioners. Further, because we find that Cole is entitled to qualified immunity under Curtis, we do not address Appellants' second argument about the affirmative defenses brought against Wells

nor Appellees' other grounds to affirm the district court's grant of summary judgment.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____