# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 11-2894

_____

| | |
|---|---|
| Charvette Williams, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Rodney Herron, in his official and | * |
| individual capacity, | * |
| | * |
| | * |
| Appellant. | * |

_____

Submitted: February 16, 2012
Filed: August 3, 2012

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Charvette Williams brought suit under 42 U.S.C. § 1983 against the County of Dakota, Nebraska, and former county official Rodney Herron. She alleged defendants committed gender discrimination in violation of her Fourteenth Amendment rights. Herron appeals the district court's[1] denial of summary judgment, asserting that he was entitled to qualified immunity. We affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

## I. Background

In January 2007, then Dakota County Chief Deputy Sheriff Rodney Herron hired Charvette Williams as a correctional officer at the Dakota County Jail (DCJ).[2] Herron possessed direct authority over DCJ employees until January 2008, when he ceased serving as jail administrator. After that time, he retained authority over DCJ employees by virtue of sheriff department hierarchy, meaning that Williams could not disregard his direct orders. Herron maintained a constant presence at DCJ, as he worked from an office there. In April or May 2008, Williams and Herron began a sexual relationship, which continued until early August 2008. The relationship began to sour in June; a June 23 email from Williams to Herron expressed Williams's discontent, stating,

> I know you don't like me and I know you dont want to be with me other than sex if even that anymore. I just need closure. . . . As for me I have never felt so unwanted in my life and I am tired of it and tired of you blowing me off. I can just not talk to you with out telling you how I feel because then I will keep on thinking that maybe you will come around. I am done now. This is my closure.

Williams explained in response to interrogatories that by July she "wanted out," and "the touching, groping and sex was no longer consensual." However, the relationship continued because Williams feared she would lose her job if she ended it. She had heard rumors of other DCJ employees who lost their jobs after ending sexual relationships with Herron. When she asked Herron whether she could be fired for "messing around with [him]," Herron assured her that she would not lose her job. Williams claimed that Herron committed the following unwelcome harassment in July

---

[2]For the purposes of this appeal, we take as true those facts the district court found or likely assumed as true—so long as they are not blatantly contradicted by the record—and make all reasonable inferences in favor of the plaintiff regarding any unresolved factual questions. See infra, part II.A.

2008: after she suggested that they should end their relationship, he walked by her workstation all day making sad "puppy dog faces"; he waited for her where employees clock out, and when she arrived he grabbed her, hugged her, and complimented the smell of her hair; and on another occasion, he began hugging and kissing her while she was in his office, and then had intercourse with her.

The relationship ended in early August 2008. Soon thereafter, Williams learned she was pregnant by Herron, but she induced a miscarriage by taking ibuprofen in a suicide attempt. When Herron learned of the pregnancy and miscarriage, he became angry and told Williams that she would cost him a local sheriff's election. (Herron was a candidate for Dakota County Sheriff at that time.) In early September 2008, Herron asked Williams if they could continue as friends. She avoided him and asked a fellow employee to tell him to leave her alone. In October she transferred to the night shift to avoid seeing Herron at work. She did not desire the transfer, as it made her home life significantly more difficult.

Williams claimed that she received special treatment while continuing her sexual relationship with Herron, including the ability to take paid leave at his request. She also provided evidence that (1) Herron had carried on sexual relationships with at least two other female DCJ employees, he aggressively pursued a relationship with a third employee after having two sexual encounters with her, and those women all either quit or were fired; (2) Herron rewarded the women who gave in to him with workplace benefits; (3) Herron told one of those women that he would fire her if she did not do what he wanted; and (4) other DCJ superiors had engaged in similar conduct with female employees.

Williams brought suit against Herron and Dakota County in June 2009. In her second amended complaint, she alleged that Herron sexually harassed her by creating and fostering a hostile work environment, in violation of her Fourteenth Amendment rights. Acting in his individual capacity, Herron moved for summary judgment in

April 2011, arguing that he was entitled to qualified immunity. The district court denied the motion. First, it concluded that an employee's right to be free from gender discrimination was clearly established under the Fourteenth Amendment. Second, it concluded that genuine questions of material fact existed as to whether Herron violated Williams's constitutional rights, including whether Herron committed widespread sexual favoritism at DCJ and whether his conduct towards Williams was sufficiently severe or pervasive as to affect a term or condition of employment. Based on the district court's statements that genuine questions of material fact existed as to whether Herron violated Williams's constitutional rights, we conclude that the district court also found Williams showed a constitutional violation when viewing the facts in the light most favorable to her.

## II. Analysis

On appeal, Herron argues that he was entitled to qualified immunity, and that the district court should have granted him summary judgment on that basis. As an initial matter, we must address whether this court has jurisdiction over Herron's appeal. If we find jurisdiction is proper, we will continue to discuss whether Herron possessed qualified immunity.

## A. Jurisdiction

We review questions of subject matter jurisdiction de novo. Cmty. Fin. Grp., Inc. v. Republic of Kenya, 663 F.3d 977, 980 (8th Cir. 2011). This court generally lacks jurisdiction over interlocutory appeals challenging the denial of a summary judgment motion. Krout v. Goemmer, 583 F.3d 557, 563-64 (8th Cir. 2009). However, under the collateral-order doctrine, this court has jurisdiction over such an appeal when it involves a denial of qualified immunity, so long as the appeal challenges only abstract issues of law. Id. at 564. Review becomes more complicated when, as here, an appellant challenges issues of both law and fact. In these

-4-

circumstances, we apply de novo review; yet in doing so, we must take as true those facts the district court found or likely assumed as true, <u>Brown v. Fortner</u>, 518 F.3d 552, 557-58 (8th Cir. 2008), so long as those facts are not blatantly contradicted by the record, <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).  As to any unresolved factual questions, we make all reasonable inferences in favor of the plaintiff.  <u>Brown</u>, 518 F.3d at 558.

## B.  Qualified Immunity

On summary judgment, government officials possess qualified immunity unless (1) the facts plaintiff has shown amount to a violation of a constitutional right, and (2) the right violated was clearly established when the alleged misconduct occurred. <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074, 2080 (2011).  A court may begin its analysis with either prong. <u>Id.</u>  For our purposes, we will first determine whether Williams has shown that Herron violated her Fourteenth Amendment rights, looking to the facts in the manner described above.  If she has met her burden, we will then determine whether the violation was clearly established at the time it occurred.

### 1.  Did Herron Violate a Constitutional Right?

To succeed on a Fourteenth Amendment hostile-work-environment claim for sexual harassment, a plaintiff must show that (1) she belongs to a protected group, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of employment. <u>Tuggle v. Mangan</u>, 348 F.3d 714, 720 (8th Cir. 2003).  "To be actionable, harassment must be both objectively and subjectively offensive, such that a reasonable person would consider it to be hostile or abusive . . . ."  <u>Erenberg v. Methodist Hosp.</u>, 357 F.3d 787, 792 (8th Cir. 2004).

On appeal, Herron contends that Williams did not sufficiently show the second and fourth elements of her claim. We address each in turn.

In regard to the second element, we find Williams presented sufficient evidence to show she adequately communicated to Herron that his conduct was unwelcome. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 68 (1986) ("The correct inquiry is whether respondent by her conduct indicated that the alleged sexual advances were unwelcome . . . ."). The harassing conduct alleged by Williams began in July 2008 and included Herron grabbing and hugging her while she was clocking out, making pouty faces at her all day after she informed him she no longer wished to have sex with him, and initiating a sexual encounter with her in his office. See id. (noting that voluntary sexual activity may also be unwelcome harassment; question "turns largely on credibility determinations committed to the trier of fact"); Quick v. Donaldson Co., 90 F.3d 1372, 1377 (8th Cir. 1996) ("[S]exual harassment includes sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.").

Williams informed Herron she was uncomfortable continuing their relationship in late June 2008, and again in July—an instance that specifically prompted workplace harassment from Herron. Williams also informed Herron of her concern that she would lose her job if she ended their relationship, which she based on the way his past relationships with DCJ employees had ended. See Quick, 90 F.3d at 1377-78 (harassing conduct is unwelcome if it was uninvited and offensive; proper inquiry is whether plaintiff indicated by her conduct that harassment was unwelcome). Therefore, we believe Williams supplied sufficient evidence that she considered Herron's conduct to be unwelcome harassment, that a reasonable person would agree, and that she communicated to Herron that his conduct was unwelcome in a way that a reasonable person would understand.

In regard to the fourth element, Williams must show that Herron's conduct was "so severe or pervasive as to alter a term, condition, or privilege of [her] employment." Duncan v. Gen. Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002). This element presents a high threshold, requiring a showing that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). It includes both a subjective and objective inquiry. Id. To determine whether the conduct complained of was sufficiently severe or pervasive, "we look to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23).

As evidenced by depositions of DCJ employees (including that of Williams), Herron established a pervasive system of sexual coercion at DCJ, enticing women to enter it with workplace benefits and securing their continued participation with the threat of negative employment consequences. Before Williams, he pursued at least three other DCJ employees in this manner, all of whom lost their jobs after ending their relationships with him. Once Williams began viewing Herron's conduct toward her as unwelcome, her employment status became jeopardized, and her submission to his conduct became a factor weighing on her continued DCJ employment. That conduct included the continuation of her sexual relationship with him, as well as unwelcome grabbing, hugging, and distractive behavior in the workplace, and an unwelcome sexual encounter in his office. See Moring v. Ark. Dep't of Corr., 243 F.3d 452, 456-57 (8th Cir. 2001) (one isolated incident may be sufficiently severe so as to alter terms and conditions of employment; court found conduct was sufficiently severe when supervisor entered plaintiff's hotel room, sat on her bed, touched her leg, and leaned in to kiss her). Herron's conduct was rendered all the more severe and coercive by the abusive workplace environment in which it occurred, an environment that his prior relationships with DCJ employees had created. See, e.g., Sandoval v.

Am. Bldg. Maint. Indus., Inc., 578 F.3d 787, 802 (8th Cir. 2009) ("When judging the severity and pervasiveness of workplace sexual harassment, this court has long held harassment directed towards other female employees is relevant and must be considered."). Williams explained that Herron's conduct made her very distressed, resulting in depression, anxiety, missed work, crying while on the job, and an undesired shift change.

Looking to the totality of the circumstances, we believe Williams showed she considered Herron's conduct to be severe enough to alter the terms, conditions, or privileges of her employment, and that a reasonable person would consider it the same. See Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 82 (1998) ("Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing . . . and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."). Williams provided evidence that Herron's conduct was severe, physically threatening, and an unreasonable interference with her work performance. Therefore, we believe Williams has sufficiently shown the fourth element of her hostile-work-environment claim. See Howard v. Burns Bros., 149 F.3d 835, 840 (8th Cir. 1998) ("Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury.").

Herron argues on appeal that the above analysis is not enough. Relying on Anderson v. Creighton, 483 U.S. 635 (1987), he contends that to satisfy the first qualified-immunity prong, Williams must support her claim using only those facts known to Herron when the violation occurred. In Anderson, the Supreme Court held that when courts analyze whether a violated right is clearly established, they must conduct an objective inquiry looking to the particular facts of the case, ultimately determining whether "a reasonable official would understand that what he is doing violates" a constitutional or statutory right. Id. at 640. The Court further explained that in the context of whether a police search was supported by probable cause or

exigent circumstances, the analysis "will often require examination of the information possessed by the searching officials." Id. at 641. Herron contends that this same examination must also apply to the second and fourth elements of Williams's hostile-work-environment claim, requiring her to show each using only those facts he knew when the violation occurred.

We reject Herron's argument for the following reasons. First, in the twenty-five years since Anderson was decided, we are unaware of any case that has applied Anderson to sexual-harassment claims in the way Herron suggests. Cf. Wright v. Rolette County, 417 F.3d 879, 884-86 (8th Cir. 2005) (court did not apply additional knowledge requirement when conducting qualified-immunity analysis in sexual harassment hostile-work-environment claim context). Second, to determine whether a warrantless search was justified by probable cause or exigent circumstances, a court must consider the information possessed by the officer when he conducted the search; however, a defendant's lack of *subjective* knowledge as to whether his advances were unwelcome or were serious enough to affect a term or condition of employment is not determinative for purposes of hostile-work-environment claims. Finally, Anderson dealt only with the second prong of the qualified-immunity analysis, and does not apply to whether a plaintiff has shown a constitutional violation occurred. See Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 433 n.11 (2d Cir. 2009) (explaining that Anderson's objectively reasonable inquiry applies only to the second qualified-immunity prong; an officer may not avoid liability under the first prong by claiming he possessed an objectively reasonable belief that his conduct was lawful).

Based on the foregoing, we conclude Williams has met her burden to show that Herron violated her Fourteenth Amendment right to be free from gender discrimination.

## 2. Was the Right Herron Violated Clearly Established?

Next, we must determine whether the right Herron violated was clearly established. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" al-Kidd, 131 S. Ct. at 2083 (alterations in original) (quoting Anderson, 483 U.S. at 640). This prong is a fact-intensive inquiry that looks to the specific facts of the case, and is not satisfied by general pronouncements of law. Moore v. Indehar, 514 F.3d 756, 759 (8th Cir. 2008). Thus, the question is whether a reasonable official would have known that the specific conduct Herron engaged in amounted to a constitutional violation. To answer it, "we look to the state of the law at the time of the incident." Shekleton v. Eichenberger, 677 F.3d 361, 367 (8th Cir. 2012). Even when no decision involves similar facts, "a right can be 'clearly established' if a reasonable public official would have known that the conduct complained of was unlawful." Turner v. Ark. Ins. Dep't, 297 F.3d 751, 755 (8th Cir. 2002).

We find that the right Herron violated was clearly established. Hostile work environments caused by sexual harassment have long been recognized as constitutional violations. See, e.g., Moring, 243 F.3d at 455-56. It is also clearly established that such claims can arise from relationships that were once consensual but later became unwelcome. See, e.g., Mukaida v. Hawaii, 159 F. Supp. 2d 1211, 1231 (D. Haw. 2001) (enough evidence for hostile-work-environment claim where only some of employer's sexual conduct may have been unwelcome); Scelta v. Delicatessen Support Servs., 89 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (regarding hostile-work-environment claims: "[t]here comes a point in time when consensual sexual relations end and unwelcome sexual harassment begins"). Because prior court decisions indicate that the specific facts of Williams's claim support Herron's liability

for gender discrimination, we find that a reasonable public official would have known Herron's conduct was unlawful.

Herron attempts to distinguish his case on appeal by arguing that we must limit our clearly established right analysis to cases involving section 1983 and qualified immunity; he further asserts that the type of claim brought by Williams has never given rise to section 1983 liability. We have previously held that section 1983 sexual-harassment claims are treated the same as sexual-harassment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Moore v. Forrest City Sch. Dist., 524 F.3d 879, 883 (8th Cir. 2008); Weger v. City of Ladue, 500 F.3d 710, 717 n.4 (8th Cir. 2007); Tuggle v. Mangan, 348 F.3d 714, 720 (8th Cir. 2003); see also Wright, 417 F.3d at 884-85 (listing cases). It should be no surprise that we apply the same treatment here, making Title VII sexual-harassment cases relevant to our determination. As explained above, a qualified-immunity analysis does not augment a plaintiff's burden to show her hostile-work-environment claim. Thus, because our claim analysis is the same regardless of whether qualified immunity is implicated, we may rely on cases not involving qualified immunity when determining whether a violation is clearly established.

### 3. Herron Was Not Entitled to Qualified Immunity

"Summary judgment should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." See Greer v. Shoop, 141 F.3d 824, 826 (8th Cir. 1998) (quoting Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989)) (internal quotation marks omitted). Because we find that Williams has satisfied both prongs of the qualified-immunity analysis, we agree with the district court that Herron was not entitled to qualified immunity, and that he was therefore not entitled to summary judgment on that basis.

## III. Conclusion

We agree with the district court's denial of Herron's summary judgment motion. Taking the facts in the light most favorable to Williams, she sufficiently showed that Herron's conduct toward her was unwelcome harassment, and that it was serious enough to alter a term or condition of her employment. In addition, she showed that Herron's conduct violated a clearly established right, based on the particular facts of this case. Accordingly, we affirm.

_____