# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2279

_____

Anmarie Calgaro,

*Plaintiff - Appellant,*

v.

St. Louis County; Linnea Mirsch, individually and in her official capacity as Director of St. Louis County Public Health and Human Services; Fairview Health Services, a Minnesota nonprofit corporation; Park Nicollet Health Services, a nonprofit corporation; St. Louis County School District; Michael Johnson, individually and in his official capacity as Principal of the Cherry School, St. Louis County School District; E.J.K.,

*Defendants - Appellees.*

-------------------------------

World Professional Association for Transgender Health,

*Amicus on Behalf of Appellee(s),*

Foundation for Moral Law,

*Amicus on Behalf of Appellant(s).*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 16, 2018
Filed: March 25, 2019

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Anmarie Calgaro sued several parties alleging violations of her parental rights over one of her minor children under the Due Process Clause of the Fourteenth Amendment. The district court[1] granted the defendants' dispositive motions and dismissed the complaint with prejudice. Calgaro appeals, and we affirm.

According to Calgaro's complaint, she is the mother of E.J.K. and three younger, minor children. In May 2015, E.J.K. moved out of Calgaro's home in St. Louis County, Minnesota. Calgaro never surrendered her parental rights, but E.J.K. obtained a letter from Mid-Minnesota Legal Aid describing E.J.K.'s father and Calgaro as "hav[ing] given up control and custody of their child." The letter concluded that E.J.K. was therefore "legally emancipated under Minnesota law."

Although this letter from a legal aid association had no legal effect, E.J.K. presented the letter to several state agencies as evidence of emancipation. Under Minnesota law, a child under age eighteen is eligible for general public assistance if she is "legally emancipated." Minn. Stat. § 256D.05, subdiv. 1(a)(9). Based on E.J.K.'s claims of emancipation, St. Louis County provided E.J.K. with funding for medical services and other living expenses, and E.J.K. obtained gender transition care from Park Nicollet Health Services. E.J.K. also received prescription medication

_____

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

from Fairview Health Services.  Both providers thought E.J.K. could give effective consent to treatment under Minnesota law because she was living apart from her parents and managing her personal financial matters.  *See* Minn. Stat. § 144.341.

When Calgaro attempted to acquire E.J.K.'s medical records from Park Nicollet and Fairview, both providers denied her request under the standard of Minnesota Statutes § 144.346.  That provision allows disclosure of treatment information if "failure to inform the parent or guardian would seriously jeopardize the health of the minor patient." *Id.*  Calgaro also approached the St. Louis County School District and Michael Johnson, the principal of E.J.K.'s high school, requesting access to E.J.K.'s educational records and an opportunity to participate in certain educational decisions. Johnson and the School District denied those requests.

Calgaro then sued St. Louis County, the interim director of St. Louis County Public Health and Human Services (individually and in her official capacity), medical providers Fairview and Park Nicollet, the St. Louis County School District, Principal Johnson (individually and in his official capacity), and E.J.K., as an interested party. She alleged that the defendants had violated a fundamental right of a parent, under the Due Process Clause, to make decisions concerning the care, custody, and control of her children.  Calgaro claimed damages and also sought declaratory and injunctive relief that would prevent the defendants from providing services to any of her minor children until a state court adjudicated the scope of her parental rights.

Calgaro moved for summary judgment, and the defendants filed cross-motions in response.  St. Louis County moved for judgment on the pleadings and for summary judgment, and the other defendants moved to dismiss for failure to state a claim.  The district court granted the defendants' motions, denied Calgaro's motion, and dismissed the complaint with prejudice.  We review those dismissals *de novo*.

The district court properly granted judgment on the pleadings for St. Louis County (including the official-capacity claim against the interim director) because Calgaro did not adequately plead a claim under § 1983. A county may be liable for a constitutional violation under § 1983 only if the violation resulted from a policy or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There is no *respondeat superior* liability for actions of an individual employee. *Id.* at 691. Although Calgaro alleges that the County's "policies, customs, practices, or procedures (or lack of procedures)" led to violations of her due process rights, she never specified a policy or custom that was the moving force behind the alleged violation. She pleads only that the County "determined" that E.J.K. was emancipated and paid for her medical services. But one erroneous determination by a county employee that E.J.K. was emancipated does not establish a policy or custom of the County that deprives parents of their constitutional rights. Calgaro's conclusory assertion that the County acted based on a policy or custom is insufficient to state a claim, and the district court correctly granted judgment on the pleadings.

Calgaro also fails to state a claim for damages against the then-interim director of Public Health and Human Services, Linnea Mirsch. The complaint lists Mirsch's position and title, and alleges that "[t]he director is the final decision and policy maker for the Department." But the complaint does not allege that Mirsch personally took any action that violated Calgaro's constitutional rights, and Mirsch cannot be held liable for the unconstitutional acts of her subordinates. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The district court correctly ruled that Calgaro failed to state a claim against Mirsch in her individual capacity.

Calgaro's claims for money damages against the medical providers fare no better. To state a claim under § 1983, Calgaro must show that Park Nicollet and Fairview acted "under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Although both facilities provided medical services to E.J.K. without parental consent, and allegedly honored E.J.K.'s consent in accordance with

§ 144.341 of the Minnesota Statutes, these actions did not transform either medical provider into a state actor. 526 U.S. at 52. Calgaro contends that the providers exercised a "public function" by terminating her parental rights concerning health care decisions, but this claim mischaracterizes what happened. Section 144.341 states that certain minors may give effective consent to medical services, but a provider does not terminate parental rights by recognizing a minor's consent, even if the provider is mistaken. Only a Minnesota court can terminate parental rights. *See* Minn. Stat. § 260C.301.

Calgaro next claims that the St. Louis County School District (including Principal Johnson in his official capacity) violated her rights by carrying out a "policy, practice, and custom" of declining to give notice or to hold a hearing with parents before determining that a minor student is emancipated. We agree with the district court that Calgaro alleged only a legal conclusion on this point. The complaint identifies no actual policy or established custom of the District about making emancipation determinations. Calgaro cites only the single incident at issue here, in which the District refused to disclose E.J.K.'s educational records or to allow Calgaro to participate in E.J.K.'s educational decisions. The District's alleged handling of this particular case, even assuming that it interfered with Calgaro's constitutional rights, is insufficient to establish a custom or practice under *Monell*. 436 U.S. at 694.

Calgaro also sued Johnson individually for damages on the ground that he violated her constitutional rights by denying access to educational records and excluding her from educational decisions. But it remains "open to question whether and to what extent the fundamental liberty interest in the custody, care, and management of one's children mandates parental access to school records." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). Nor is it clearly established that parents have a constitutional right to manage all details of their children's education or to obtain consultation with school officials on everyday

matters.  *See Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015). Because existing precedent does not clearly establish the rights that Calgaro asserts, Johnson is entitled to qualified immunity.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Calgaro's remaining claims for declaratory and injunctive relief against the several defendants are moot.  E.J.K. has turned eighteen years old, ceased to be a minor under Minnesota law, and completed her education in the St. Louis County School District.  *See* Minn. Stat. § 645.451, subdiv. 2.  There is no ongoing case or controversy over Calgaro's parental rights to make decisions for E.J.K. as a minor or to access her medical or educational records.  That Calgaro has three other minor children does not preserve a controversy.  There is an exception to mootness for cases that are capable of repetition yet evading review, but the exception applies only when there is a reasonable expectation that the alleged actions of the defendant will recur. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam).  Calgaro seeks an injunction against actions directed toward "the minor children of Ms. Calgaro deemed emancipated by Defendants without Ms. Calgaro's consent."  But Calgaro has not established a reasonable expectation that any of her three minor children will be deemed emancipated by the defendants.  The claims for declaratory and injunctive relief are therefore moot.

E.J.K. was joined in the lawsuit as an interested party under Federal Rule of Civil Procedure 19(a)(1)(B)(i).  Given that none of Calgaro's claims against the other defendants may proceed, the district court properly dismissed any claims against E.J.K. as well.

The judgment of the district court is affirmed.

_____