# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2283

_____

Northland Baptist Church of St. Paul, Minnesota; John Bruski; Living Word
Christian Center

*Plaintiffs*

Glow In One Mini Golf, LLC; Aaron Kessler; Myron's Cards and Gifts, Inc.;
Larry Evenson; AJ Hulse Company; Andrew Hulse; Gay Bunch-Hulse

*Plaintiffs - Appellants*

v.

Governor Tim Walz, individually and in his official capacity; Attorney General
Keith M. Ellison, in his official capacity; Mike Freeman, in his official capacity as
County Attorney for Hennepin County, Minnesota; Anthony Charles Palumbo, in
his official capacity as County Attorney for Anoka County, Minnesota; John Choi,
in his official capacity as County Attorney for Ramsey County, Minnesota

*Defendants - Appellees*

------------------------------

The Forum for Constitutional Rights

*Amicus on Behalf of Appellants*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 17, 2022
Filed: June 16, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

In response to the COVID-19 pandemic, Minnesota Governor Tim Walz declared a state of "peacetime emergency" and began issuing executive orders (EOs) intended to combat the spread of the virus. The EOs pertinent to this appeal limited which types of businesses could continue operations and, later, specified the capacities at which those businesses could operate. Appellants, three Minnesota businesses and their respective owners, suffered financial losses during the COVID-19 pandemic and while these EOs were in effect. Appellants brought an Equal Protection Clause claim against Governor Walz and Keith M. Ellison, Minnesota's Attorney General, in their official capacities and a Takings Clause claim against Governor Walz in his individual capacity, which the district court[1] dismissed.[2] They now appeal that dismissal, and having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

_____

[1]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota.

[2]Two churches, Northland Baptist Church of St. Paul and Living Word Christian Center, as well as a pastor, John Bruski, originally joined appellants as plaintiffs. The churches and pastor brought a free exercise claim and a freedom of speech and assembly claim pursuant to the United States and Minnesota Constitutions and named as defendants Mike Freeman, Hennepin County Attorney, Tony Palumbo, Anoka County Attorney, and John Choi, Ramsey County Attorney. However, the plaintiffs voluntarily dismissed their claims against Freeman, Palumbo, and Choi, leaving only Governor Walz and Attorney General Ellison as defendants. Then, the parties, pursuant to Federal Rule of Civil Procedure 41(a)(1), stipulated to the dismissal of the churches' and the pastor's claims with prejudice, leaving only appellants as plaintiffs.

I.

On March 13, 2020, former President Donald Trump declared the United States to be in a state of emergency due to the COVID-19 pandemic and approved major disaster declarations in all 50 states and most territories. On this same day, Governor Walz issued EO 20-01, which declared Minnesota to be in a "peacetime emergency." In that EO, Governor Walz explained:

> The infectious disease known as COVID-19, an act of nature, has now been detected in 118 countries and territories, including the United States. COVID-19 has been reported in 42 states. There are over 1,600 confirmed cases nationwide, including fourteen in Minnesota.
>
> The U.S. Department of Health and Human Services Secretary has declared a public health emergency for the United States to aid the nation's healthcare community in responding to COVID-19. The World Health Organization has recently assessed that this outbreak can be characterized as a pandemic.
>
> In coordination with other state agencies, local governments, and partners in the private sector, the Minnesota Department of Health . . . has been preparing for and responding to the COVID-19 pandemic in Minnesota.

R. Doc. 57-1, at 30.

Three days later, on March 16, Governor Walz issued EO 20-04 in response to a "rapidly increasing" number of confirmed COVID-19 cases within Minnesota's borders. This EO closed some "places of public accommodation," which the EO defined as "a business, or an educational, refreshment, entertainment, or recreation facility, or an institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public." R. Doc. 57-1, at 42. This included appellant Glow In One Mini Golf, LLC, an indoor mini-golf facility owned by

appellant Aaron Kessler. EO 20-04 became effective March 17, 2020. On March 18, Governor Walz issued EO 20-08, which amended EO 20-04 to include, as relevant here, salons like appellant AJ Hulse Company, a hair salon with two locations owned by appellants Andrew Hulse and Gay Bunch-Hulse. EO 20-08 was effective immediately.

Throughout 2020, Governor Walz continued issuing EOs, and in each EO, he provided an updated total of active COVID-19 cases in Minnesota and extended, modified, or replaced previously issued guidelines to reflect Minnesota's ever-evolving response to the virus. These EOs initially provided for the almost-complete closure of the state and required Minnesotans to remain at home unless engaging in "critical infrastructure sector" work, a term defined by the United States Department of Homeland Security to include "workers needed to maintain the services and functions Americans depend on daily and that need to be able to operate resiliently during the COVID-19 pandemic response," such as health care workers, law enforcement, and first responders. R. Doc. 57-1, at 60. As a result, appellant Myron's Cards and Gifts, Inc., a greeting card and gift store owned by appellant Larry Evenson, along with Glow In One and AJ Hulse, were forced to close completely. However, in May 2020, Governor Walz issued an EO that permitted certain businesses, including Myron's Cards and Gifts and AJ Hulse, to begin conducting curbside retail sales and, later, EOs that allowed businesses like Myron's Cards and Gifts to begin operating at 50% capacity and AJ Hulse to begin operating at 25% capacity. Finally, on June 5, 2020, Governor Walz issued EO 20-74, which became effective on June 9 and which is the focus of appellants' equal protection claim. EO 20-74 allowed businesses like AJ Hulse to reopen at 50% capacity and Glow In One to reopen at 25% capacity. However, by June 9, Glow In One had closed completely due to lack of income and, for the same reasons, could not reopen. Associated with these EOs were criminal penalties which included jail time and fines.

Appellants filed this action asserting that the EOs violated their constitutional rights, and Appellees filed a motion to dismiss, which the district court granted in

-4-

part and denied in part. The district court granted sovereign immunity to appellees insofar as appellants sought monetary damages against them in their official capacities, denied sovereign immunity to appellees insofar as appellants sought declaratory and injunctive relief against them in their official capacities, and granted qualified immunity to Governor Walz insofar as appellants brought claims against him in his individual capacity. The district court alternatively dismissed appellants' equal protection and takings claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The district court did not consider mootness. Appellants now appeal the district court's dismissal of their equal protection and takings claims.

"We review the grant of the motion to dismiss de novo." Allen v. Monico, 27 F.4th 1372, 1376 (8th Cir. 2022) (reviewing dismissal based on qualified immunity de novo); see also Butler v. Bank of Am., N.A., 690 F.3d 959, 961 (8th Cir. 2012) (reviewing dismissal for failure to state a claim pursuant to Rule 12(b)(6) de novo). "[W]e read the complaint in the light most favorable to the plaintiff, making all reasonable inferences of fact in the plaintiff's favor." Allen, 27 F.4th at 1374. "When considering . . . a motion to dismiss under Fed.R.Civ.P. 12(b)(6)[ ], the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Miller v. Redwood Toxicology Lab'y, Inc., 688 F.3d 928, 931 (8th Cir. 2012) (alterations in original) (citation omitted). Having determined the applicable standard of review, we turn to appellants' arguments and, for the following reasons, affirm the district court.

## II.

We must first determine whether we have jurisdiction to consider appellants' equal protection claim, a claim for which they request only declaratory and injunctive relief.

"Article III of the Constitution grants federal courts the power to hear 'Cases' and 'Controversies.'  This 'requirement subsists through all stages of federal judicial proceedings, trial and appellate.'"  Teague v. Cooper, 720 F.3d 973, 976 (8th Cir. 2013) (citation omitted).  "To establish Article III standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the defendant's challenged action, and it must be likely that the injury will be redressed by a favorable judicial decision."  Cross v. Fox, 23 F.4th 797, 800 (8th Cir. 2022) (citation omitted); see also North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam) ("To be cognizable in a federal court, a suit 'must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" (alteration in original) (citation omitted)).  "When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot."  Ali v. Cangemi, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (alteration in original) (citation omitted); see also Whitfield v. Thurston, 3 F.4th 1045, 1047 (8th Cir. 2021) ("When the issues presented in a case are no longer live, the case is moot and is therefore no longer a 'Case' or 'Controversy' for purposes of Article III." (citation omitted)).  Therefore, where, over the course of the litigation a case has become moot, we lack jurisdiction and must dismiss the action.  See Ali, 419 F.3d at 724.

Here, appellants seek a declaration that

> Governor Walz did not have the statutory authority to declare an emergency . . . , issue shelter in place orders, authorize penalties in excess of his statutory authority, or otherwise restrict lawful activity . . . under the circumstances, and that the Attorney General does not have the authority to prosecute violations of the EOs using that authority,

R. Doc. 51, at 47, as well as a declaration that appellees "violated [their] equal protection rights . . . to operate their businesses without arbitrary and capricious

-6-

government interference," R. Doc. 51, at 47-48. Additionally, appellants request an injunction "prohibiting [appellees] from enforcing EO 20-74, and any additional, successor, or replacement executive orders which violate [their] rights." R. Doc. 51, at 48.

However, EO 20-74 (as well as the other EOs challenged by appellants, though appellants focus on EO 20-74 in this claim) is no longer in effect, all capacity restrictions have lapsed, and Minnesota is no longer in a peacetime emergency. Thus, because the issues presented by appellants' equal protection claim lost their life during the course of this litigation, a declaration or an injunction by this Court cannot provide relief, and the claim has become moot. See Rice, 404 U.S. at 246 ("Early in its history, this Court held that it had no power to issue advisory opinions, and it has frequently repeated that federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." (citation omitted)); cf. Trump v. Hawaii, 138 S. Ct. 377, 377 (2017) (per curiam) (finding moot a challenge to provisions of an executive order which had "expired by [their] own terms" ((alteration in original) (citation omitted)).

However, our analysis does not end here because "[t]here is an exception to [the] mootness [doctrine] for cases that are capable of repetition yet evading review." Calgaro v. St. Louis Cnty., 919 F.3d 1054, 1059 (8th Cir. 2019). The "capable of repetition yet evading review" exception is applicable "when there is a reasonable expectation that the alleged actions of the defendant[s] will recur." Id. We have explained:

> Under this doctrine, a case that would otherwise be moot is not if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again.

Whitfield, 3 F.4th at 1047 (alterations in original) (citation omitted); see also Murphy v. Hunt, 455 U.S. 478, 482 (1982) (per curiam) (requiring "a 'reasonable

expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party" (citation omitted)).

Beginning in 2020, the nation's understanding of COVID-19 changed rapidly, and states, like Minnesota, have been required to adapt their approach to accommodate those near-constant developments.  In turn, federal courts across the country have been presented with novel questions of mootness.  This Court, following the Supreme Court, has explained that although a lawsuit challenging a COVID-19 restriction may outlive that challenged restriction, "that does not necessarily moot the case."  See Hawse v. Page, 7 F.4th 685, 692 (8th Cir. 2021) (quoting Tandon v. Newsom, 141 S. Ct. 1294, 1297 (2021) (per curiam)).  "At the same time, however, that the government once imposed a particular COVID restriction does not necessarily mean that litigation over a defunct restriction presents a live controversy in perpetuity."  Id.  Instead, we must engage in a fact-specific analysis to determine if the issue is capable of repetition yet evading review.  See id. (explaining that "[r]esolution of the mootness question requires attention to the particular circumstances of the case").

In Minnesota, the governor may declare a peacetime emergency "only when an act of nature . . . endangers life and property and local government resources are inadequate to handle the situation."  Minn. Stat. § 12.31, subdiv. 2(a).  Once a peacetime emergency has been declared, the governor is authorized to act pursuant to "the necessary portions of the state emergency operations plan," id. at subdiv. 3, which includes "mak[ing], amend[ing], and rescind[ing] the necessary orders and rules" to address that emergency, § 12.21, subdiv. 3(1).

Here, it is appellants' burden to prove that this issue is capable of repetition yet evading review.  See Whitfield, 3 F.4th at 1047.  However, they have not offered anything that supports their hypothesis that Governor Walz will, first, declare a second peacetime emergency and, then, will issue additional EOs—specifically, EOs like 20-74 that, in their view, treat them differently than other, similarly situated businesses and impede them from conducting their businesses as they wish.  Instead,

appellants state only that Governor Walz "could easily declare another peacetime emergency tomorrow" and "has stated ongoing concern about 'variants' which have led to a rise in COVID-19 cases among unvaccinated people."

Our recent opinion in Hawse suggests that, due to "the emerging availability of vaccines for COVID-19, and declining COVID-19 case numbers," i.e., the "substantial changes in public health conditions since May 2020," it is unlikely that government officials will reissue the sort of exacting restrictions on businesses in 2022 or beyond as they did in 2020. See 7 F.4th at 692-93. Courts across the country have similarly found that, due to developments in the COVID-19 public health crisis, such as the availability of vaccines, orders like Governor Walz's EOs are not capable of repetition yet evading review. See, e.g., Church v. Polis, 2022 WL 200661, at *6 (10th Cir. Jan. 24, 2022) ("Thus, any chance of the State reimposing the challenged restrictions on plaintiffs is entirely speculative, stemming only from the uncertainty inherent in the pandemic and the State's general authority to impose restrictions in emergencies."); Cnty. of Butler v. Governor of Pennsylvania, 8 F.4th 226, 230 (3d Cir. 2021) (explaining that plaintiffs failed to show that challenged orders were capable of repetition yet evading review and that, to the contrary, defendants "represented that the public health landscape has so fundamentally changed that 'what we were facing in this case is not what you would be facing going forward'" (citation omitted)); Memphis A. Philip Randolph Inst. v. Hargett, 2 F.4th 548, 560 (6th Cir. 2021) (finding that capable-of-repetition-yet-evading-review exception to mootness did not apply to COVID-19-related challenge to election provision because, due to "advancements in COVID-19 vaccinations and treatment since this case began, the COVID-19 pandemic is unlikely to pose a serious threat during the next election cycle").

After carefully reviewing the allegations contained in appellants' complaint, along with materials in the public record, materials necessarily embraced by the pleadings, and cases like Hawse, in which this Court (and other courts) have described developments in the state of the COVID-19 pandemic between 2020 and now, we find that there is no reasonable expectation that EO 20-74 is capable of

repetition. Therefore, we affirm the district court's dismissal of appellants' equal protection claim, albeit on mootness grounds. See Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019) ("[W]e may affirm a judgment on any ground supported by the record.").

However, our conclusion that appellants' claim for declaratory and injunctive relief is moot does not preclude us from reaching appellants' claim for damages against Governor Walz in his individual capacity. Therefore, we turn to the district court's finding that Governor Walz was entitled to qualified immunity on appellants' takings claim.

"Qualified immunity is an immunity from suit, not merely a defense to liability," and "[t]o avoid pretrial dismissal, a plaintiff must present facts showing the violation of a constitutional right that was clearly established at the time of the defendant's act." Irvin v. Richardson, 20 F.4th 1199, 1204 (8th Cir. 2021). To determine if a state official is entitled to qualified immunity, we employ the familiar two-prong analysis, asking "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Burns v. Cole, 18 F.4th 1003, 1007 (8th Cir. 2021) (citation omitted). "Courts can 'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id. (citation omitted).

The Takings Clause, made applicable to states like Minnesota through the Fourteenth Amendment, provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. There are different types of takings claims that a plaintiff may bring depending on what type of government action he wishes to challenge. See Outdoor Graphics, Inc. v. City of Burlington, 103 F.3d 690, 693 (8th Cir. 1996) ("The takings clause reaches both direct appropriations of property and some regulations that redefine a property owner's range of interests in property."). "An owner whose deprivation is less than complete, and thus does

not amount to a per se taking, may nevertheless be entitled to compensation in some circumstances." Id. at 695.

Here, appellants argue that Governor Walz's EOs (specifically, EOs 20-04, 20-08, 20-18, 20-20, 20-33, 20-38, 20-48, and 20-56) constituted a per se taking or, in the alternative, a regulatory taking. A per se taking occurs where there is a "direct government appropriation of or physical invasion of private property." Hawkeye Commodity Promotions, Inc. v. Vilsack, 486 F.3d 430, 440 (8th Cir. 2007) (citation omitted). A regulatory taking has traditionally been characterized as occurring when a regulation "goes too far." See, e.g., id. (citation omitted). The Supreme Court recently clarified that when determining whether a per se taking or a regulatory taking occurred, if either, the "essential question" is "whether the government has physically taken property for itself or someone else—by whatever means—or has instead restricted a property owner's ability to use his own property." Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2072 (2021).

We need not parse through whether or not a taking occurred, however, because even assuming that a taking *did* occur, whatever its type, appellants have offered nothing to support their contention that, in 2020, the law was clearly established such that Governor Walz would have understood that his EOs constituted a taking.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Williams v. Herron, 687 F.3d 971, 977 (8th Cir. 2012) (alterations in original) (citation omitted). "In other words, the right violated must have been established 'beyond debate.'" Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017) (citation omitted). "[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Bell v. Neukirch, 979 F.3d 594, 607 (8th Cir. 2020) (alteration in original) (citation

omitted). In performing the clearly established inquiry, we must "look to the state of the law at the time of the incident." Williams, 687 F.3d at 977 (citation omitted).

We agree with the district court that Governor Walz is entitled to qualified immunity on this claim because appellants have not shown that Governor Walz's response to COVID-19—specifically, closing and then restricting the capacity of businesses deemed non-critical—was a taking under clearly established law. In appellants' opening brief to this Court, they discuss why, in their view, Governor Walz's EOs constituted a taking, citing hallmark Takings Clause cases such as Penn Central Transportation Co. v. City of New York, 438 U.S. 104 (1978). They suggest that, for decades, it has been clearly established that just compensation is required for government takings. We agree with that general proposition, as it is written within the Fifth Amendment's text. However, that does not explain how Governor Walz, in 2020, would have known that his EOs, issued in response to an unprecedented pandemic, constituted a taking for which just compensation was owed.

As a final matter, appellants do not point to, nor can we find, any instance in which the Supreme Court or this Court has held a government official individually liable for a government taking. Instead, Supreme Court cases only contemplate government entities—not individual government officials—providing just compensation. Recently, in Cedar Point Nursery, the Supreme Court, when discussing a physical taking, explained that the Fifth Amendment Takings Clause implicates "a simple, *per se* rule: The *government* must pay for what it takes." 141 S. Ct. at 2071 (second emphasis added). Similarly, earlier cases, regardless of the type of taking being considered, refer only to the government's provision of just compensation, never an individual's. See, e.g., Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538 (2005) ("[W]here government requires an owner to suffer a permanent physical invasion of her property—however minor—it must provide just compensation. . . . [T]he government must [also] pay just compensation for such 'total regulatory takings . . . .'" (citation omitted)); Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg. Plan. Agency, 535 U.S. 302, 322 (2002) ("When the government

-12-

physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner . . . ."); City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 717 (1999) ("Although the government acts lawfully when, pursuant to proper authorization, it takes property and provides just compensation, the government's action is lawful solely because it assumes a duty, imposed by the Constitution, to provide just compensation."); Armstrong v. United States, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole."). In fact, the Supreme Court, when proscribing how "just compensation" should be calculated, considers "the property owner's loss" and "the government's gain." Brown v. Legal Found. of Wash., 538 U.S. 216, 235-36 (2003). Although none of these cases expressly *reject* appellants' theory that a government official can be held personally liable for a government taking, it is traditionally the government itself that is responsible for compensating an individual who has suffered a governmental taking.

Ultimately, we find that, in 2020, the law was not clearly established such that Governor Walz would have understood that his issuance of the challenged EOs violated appellants' constitutional right to just compensation for a government taking. We therefore affirm the district court's grant of qualified immunity and dismiss appellants' takings claim.

III.

For the foregoing reasons, we affirm.

_____